Slip Op. 01-66

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
:
CONSOLIDATED BEARINGS COMPANY,          :
                                        :
                    Plaintiff,          :
                                        :        Court No. 98-09-02799
                    v.                  :
                                        :
THE UNITED STATES,                      :
                                        :
                    Defendant.          :
_____:

Plaintiff, Consolidated Bearings Company ("Consolidated Bearings"), moves pursuant to USCIT R. 56.1 for judgment upon the agency record challenging the liquidation instructions number 8216117 ("Liquidation Instructions") issued by the United States Department of Commerce, International Trade Administration ("Commerce"), on August 4, 1998, following Commerce's final determination entitled <u>Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany</u> ("<u>Final Results</u>"), 56 Fed. Reg. 31,692 (July 11, 1991), as amended by <u>Amended Final Results of Antidumping Duty Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Germany</u> ("<u>Amended Final Results</u>"), 62 Fed. Reg. 32,755 (June 17, 1997). In the Liquidation Instructions, Commerce required the United States Customs Service ("Customs") to assess antidumping duties on Consolidated Bearings' imports of the merchandise manufactured by FAG Kugelfischer Georg Schaefer KGaA ("FAG Kugelfischer") at the cash deposit rates in effect at the time of entry instead of at the weighted-average rates determined for FAG Kugelfischer in the <u>Amended Final Results</u>, 62 Fed. Reg. 32,755. Consolidated Bearings alleges that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and requests the liquidation of the merchandise produced by FAG Kugelfischer and imported by Consolidated Bearings during the period of review covered in the <u>Final Results</u>, 56 Fed. Reg. 31,692, and the <u>Amended Final Results</u>, 62 Fed. Reg. 32,755, at the rates provided in the liquidation instructions issued by Commerce on September 9, 1997.

**Held:** Consolidated Bearings' USCIT R. 56.1 motion is granted. This case is remanded to Commerce to: (a) annul the Liquidation Instructions issued by Commerce on August 4, 1998; and (b) take

further actions not inconsistent with this opinion.

[Consolidated Bearings' motion is granted.  Case remanded].

Dated: June 5, 2001

Winthrop, Stimson, Putnam & Roberts (Christopher R. Wall and Mark A. Monborne) for plaintiff.

Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau); of counsel: Myles S. Getlan, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States.

## OPINION

**TSOUCALAS, Senior Judge:**  Plaintiff, Consolidated Bearings Company ("Consolidated Bearings"), moves pursuant to USCIT R. 56.1 for judgment upon the agency record challenging the liquidation instructions number 8216117 ("Liquidation Instructions") issued by the United States Department of Commerce, International Trade Administration ("Commerce"), on August 4, 1998, following Commerce's final determination entitled Final Results of Antidumping Duty Administrative Review of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany ("Final Results"), 56 Fed. Reg. 31,692 (July 11, 1991), as amended by Amended Final Results of Antidumping Duty Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Germany ("Amended

Final Results"), 62 Fed. Reg. 32,755 (June 17, 1997).  In the Liquidation Instructions, Commerce required the United States Customs Service ("Customs") to assess antidumping duties on Consolidated Bearings' imports of the merchandise manufactured by FAG Kugelfischer Georg Schaefer KGaA ("FAG Kugelfischer") at the cash deposit rates in effect at the time of entry instead of at the weighted-average rates determined for FAG Kugelfischer in the Amended Final Results, 62 Fed. Reg. 32,755.  Consolidated Bearings alleges that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and requests the liquidation of the merchandise produced by FAG Kugelfischer and imported by Consolidated Bearings during the period of review covered in the Final Results, 56 Fed. Reg. 31,692, and the Amended Final Results, 62 Fed. Reg. 32,755, at the rates provided in the liquidation instructions issued by Commerce on September 9, 1997.

## BACKGROUND

On May 15, 1989, Commerce published antidumping duty orders on certain antifriction bearings ("AFBs") from Germany and eight other countries.  See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, 54 Fed. Reg. 20,900.

Commerce subsequently instructed Customs to require importers of bearings subject to the order (including those manufactured in Germany by FAG Kugelfischer) to post cash deposits equal to the following final antidumping duty margin percentages determined for FAG Kugelfischer in the original investigation. See Pl.'s Br. Supp. Mot. J. Agency R. ("Pl.'s Br."), Ex. 3 at 4-7.

Consolidated Bearings is a distributor of a range of antifriction bearings manufactured in various countries. See id., Ex. 4. On November 16, 1989, Consolidated Bearings entered a shipment of AFBs manufactured in Germany by FAG Kugelfischer. See id. Customs required Consolidated Bearings to make a certain cash deposit of estimated antidumping duties applicable to the merchandise at issue, and such deposit was properly made. See id.

On December 12, 1989, Consolidated Bearings entered another shipment of AFBs, part of which was manufactured by FAG Kugelfischer, and made a cash deposit of estimated antidumping duties applicable to this shipment of merchandise at the same rate as that allocated to the entry of November 16, 1989. See id.

On June 1, 1990, Commerce published a notice that initiated an administrative review of imports of different merchandise including the merchandise that was: (1) entered between November 9, 1988, and April 30, 1990; and (2) manufactured by FAG Kugelfischer. See id.,

Ex. 5.  Upon conclusion of the review, Commerce published the Final Results providing certain assessment rates for all the merchandise reviewed.  See 56 Fed. Reg. 31,692.

Later on, Commerce amended the determinations made in the Final Results, published a notice with regard to a pertinent court decision that took place during the interim and established a weighted-average antidumping duty rate for FAG Kugelfischer.  See Amended Final Results, 62 Fed. Reg. 32,755.  Neither the notice nor the Amended Final Results expressly provided whether or not this antidumping duty rate would apply to the entries of Consolidated Bearings.

On September 9, 1997, acting in accordance with the determinations made in Final Results, 56 Fed. Reg. 31,692, and Amended Final Results, 62 Fed. Reg. 32,755, Commerce instructed Customs to liquidate entries of the merchandise produced by FAG Kugelfischer and imported by certain designated importers, the list of which did not include Consolidated Bearings, at certain rates. See Pl.'s Br., Ex. 6.

Almost a year later, on August 4, 1998, Commerce sent the Liquidation Instructions at issue to Customs with regard to any merchandise that: (a) was produced in Germany; and (b) still remained unliquidated after the application of prior liquidation

instructions including that of September 9, 1997.  See id., Ex. 7.

The Liquidation Instructions required Customs to liquidate the

merchandise "at the deposit rate[s] required at the time of entry

of the merchandise," the rates much higher than those applicable

under the prior liquidation instructions of September 9, 1997.  Id.

The merchandise of Consolidated Bearings fell subject to the

Liquidation Instructions at issue.


**I.    JURISDICTION**

As a preliminary matter, there is a jurisdictional question.

Consolidated Bearings and Commerce agree that jurisdiction is

sought under 28 U.S.C. § 1581(i) (1994), the court's residual

jurisdiction provision.  See Pl.'s Br. Reply Def.'s Mem. Opp. Br.

Supp. Pl.'s Mot. J. Agency R. ("Pl.'s Reply") at 4; Def.'s Mem.

Opp. Br. Supp. Pl.'s Mot. J. Agency R. ("Def.'s Mem.") at 8-10.

It is incumbent upon the Court to independently assess the

jurisdictional basis for a case, see Ad Hoc Comm. of Fla. Producers

of Gray Portland Cement v. United States, 22 CIT ___, ___, 25 F.

Supp. 2d 352, 357 (1998), a principal that is especially true where

a party seeks to invoke the court's residual jurisdiction

authority.  And, "[i]t is well established that the residual

jurisdiction of the court under [sub]section 1581(i) 'may not be

invoked when jurisdiction under another [sub]section of § 1581 is

or could have been available, unless the relief provided under that other subsection would be manifestly inadequate.'" Id. (citing Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) (emphasis in original)).

In the given case, it is appropriate to exercise residual jurisdiction because jurisdiction under other subsections of section 1581 is not available. Commerce suggests that subsections 1581(a) and 1581(c) could have served as viable jurisdictional alternatives for Consolidated Bearings. See Def.'s Mem. at 15-16. Commerce's liquidation instructions, however, are not subject to review under subsection 1581(a) because Commerce, not Customs, is the agency responsible for issuing the instructions and determining the amount of antidumping duty to be assessed. Commerce's liquidation instructions also are not reviewable under subsection 1581(c) because they were not part of the Final Results or the Amended Final Results. Rather, such instructions are issued after relevant final determinations are published and, accordingly, it was impossible for Consolidated Bearings to contest the instructions as required under 19 U.S.C. § 1516a(a)(2)(B)(iii) (1994). And finally, none of the other subsections of section 1581 of Title 19 provides a viable basis for jurisdiction. See generally, Heveafil Sdn. Bhd. v. United States, 1998 Ct. Intl. Trade LEXIS 111; Slip Op. 98-115 (Aug. 11, 1998). Accordingly, the

issue of antidumping law presented in this case is appropriate for review under subsection 1581(i).

## II. AFFIRMATIVE DEFENSES

In addition to its jurisdictional challenge, Commerce raises two affirmative defenses to Consolidated Bearings' claim. Specifically, Commerce asserts that: (1) the action was commenced beyond the two-year limitation period contained in 28 U.S.C. § 2636(i)(1994); and (2) Consolidated Bearings has failed to exhaust its administrative remedies. See Def.'s Mem. at 9-10, 22-26.

### A. Statute of Limitations Contained in 28 U.S.C. § 2636(i)

#### 1. Standard of Review

As a preliminary matter, this Court determines the appropriate standard of review to be applied to Commerce's interpretation of 28 U.S.C. § 2636(i).

A statute of limitations is not a matter within the particular expertise of an agency. Rather, it presents "a clearly legal issue that courts are better equipped to handle." Bamidele v. INS, 99 F.3d 557, 561 (3rd Cir. 1996) (quoting Dion v. Secretary of Health and Human Serv., 823 F.2d 669, 673 (1st Cir. 1987), and citing Lynch v. Lyng, 872 F.2d 718, 724 (6th Cir. 1989), and In re Oliver M. Elam Jr., Co., 771 F.2d 174, 181 (6th Cir. 1985)). Therefore, Commerce's

interpretation of 28 U.S.C. § 2636(i) is not subject to deference under the two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and it is incumbent upon the Court to independently assess the boundaries set by the language of section 2636(i).

## 2. Contentions of the Parties

Relying on Mitsubishi Elecs. Am., Inc. v. United States ("Mitsubishi"), 44 F.3d 973 (Fed. Cir. 1994), Commerce argues that this action is time-barred. See Def.'s Mem. at 22-24. Commerce asserts that Consolidated Bearings' cause of action accrued on the last day upon which Consolidated Bearings had an opportunity to request an administrative review under Commerce's notice of such opportunity, see Opportunity To Request Administrative Review of Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation ("Notice"), 55 Fed. Reg. 19,093 (May 8, 1990), because Commerce's notice provided for an automatic assessment in the absence of a request for review. See id.

Consolidated Bearings maintains that Commerce: (1) did not resort to the automatic assessment regulation; and (2) under the circumstances of the case at bar, Consolidated Bearings had no reason to believe that Commerce would resort to such automatic assessment regulation. See Pl.'s Reply at 15-18.

### 3.   Analysis

Section 2636(i) of Title 28 reads as follows:

>     A civil action of which the Court of International
> Trade has jurisdiction under section 1581 of this title,
> other than an action specified in subsections (a)-(h) of
> this section, is barred unless commenced in accordance
> with the rules of the court within two years after the
> cause of action first accrues.

Indeed, both parties correctly note that "a claim accrues when 'the aggrieved party reasonably should have known about the existence of the claim.'"  Mitsubishi, 44 F.3d at 978 (quoting St. Paul Fire & Marine Ins. Co. v. United States, 959 F.2d 960, 964 (Fed. Cir. 1992)); accord Def.'s Mem. at 22, Pl.'s Reply at 17-18. The Mitsubishi court held that the plaintiff's cause of action accrued on the day following the expiration of the deadline to request an administrative review.  See id.  The Mitsubishi court clarified that

> [the plaintiff's] claim arises from the automatic
> assessment of antidumping duties under 19 C.F.R. §
> 353.53a(d)(1) (1987).  This regulation applies once a
> party's opportunity to request an administrative review
> expires.  Commerce's initial notice allowed [the
> plaintiff] to request review through [a specified date].
> Neither [the plaintiff] nor any other interested party
> requested administrative review by that time.  Section
> 353.53a(d)(1)'s automatic assessment procedure therefore
> went into effect on [the specified date].  The regulation
> and Commerce's notice informed [the plaintiff] that
> Commerce would assess duties on the [merchandise]
> beginning [the specified date].  [The plaintiff's] cause
> of action accrued, and the statute of limitations began
> to run, on [the specified date] when all the events
> necessary to state the claim had occurred.

Mitsubishi, 44 F.3d at 978 (internal citation omitted).

Thus, the Mitsubishi court calculated the cut-off date based on the particular fact that there was no request for an administrative review.  The circumstances of the case at bar are exactly opposite.

Unlike the situation in Mitsubishi, Commerce's reliance upon 19 C.F.R. § 353.53a(d)(1) is misplaced because it is uncontested that Commerce has received requests to conduct administrative reviews of antidumping duty orders concerning the entries covered by the Notice, 55 Fed. Reg. 19,093, see Initiation of Antidumping Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom, 55 Fed. Reg. 23,575 (June 11, 1990), and in fact conducted an administrative review that covered, among others, the merchandise produced by FAG Kugelfischer.[1]  See Final Results,

---

[1] Consolidated Bearings contends that Consolidated Bearings itself timely requested a review of its entries.  See Pl.'s Reply at 16 n.6.  The point is contrary to the assertion made by Commerce which maintains that Consolidated Bearings did not request a review of its entries.  See Def.'s Mem. at 23-24.  In support of its claim, Consolidated Bearings points to a letter from an attorney for Torrington Company, a petitioner in the review at issue who is unrelated to Consolidated Bearings.  See Pl.'s Reply at 16 n.6.  Commerce alleges that this letter (a public document that "failed to [be] include[d]" in the administrative record due to an omission made by an attorney employed by Commerce, see Letter by Myles S.

56 Fed. Reg. at 31,692. Therefore, neither the holding of Mitsubishi nor 19 C.F.R. § 353.53a(d)(1) is applicable to the case at bar. Accord Pl.'s Reply at 16-17.

Both parties correctly note that a claim accrues for purposes of 28 U.S.C. § 2636(i) when "'the aggrieved party reasonably should have known about the existence of the claim.'" Pl.'s Reply at 17-18, Def.'s Mem. at 22 (both quoting Mitsubishi, 44 F.3d at 978 (quoting, in turn, St. Paul Fire & Marine Ins. Co. v. United States, 959 F.2d 960, 964 (Fed. Cir. 1992)). Granted that, Consolidated Bearings could not have reasonably envisioned or known about the existence of a claim arising from Commerce's application of an automatic assessment procedure until Commerce actually sought the application of the rate ensuing from such procedure, specifically until August 4, 1998, the date when Commerce instructed Customs to liquidate entries of Consolidated Bearings at the cash deposit rate.

---

Getlan (May 25, 1999)), should not be considered by the Court. See Def.'s Mem. at 26. While noting that: (a) a request for a review by an unrelated entity is not equal to a request for a review by Consolidated Bearings; and (b) Commerce should not be allowed to capitalize on the error Commerce itself made, the Court need not reach the merits of this controversy. For the purposes of this opinion it is sufficient to observe that neither party contests the following: (a) a review was indeed undertaken, see Pl.'s Br. at 5; Def.'s Mem. at 1; accord Final Results, 56 Fed. Reg. 31,692; and (b) merchandise manufactured by FAG Kugelfischer was indeed subject to the review. See Pl.'s Br. at 5; Def.'s Mem. at 4; accord Final Results, 56 Fed. Reg. 31,692.

Based on the foregoing, this Court concludes that the Statute of Limitations contained in section 2636(i) of Title 28 was properly tolled upon Consolidated Bearings' filing of a summons and complaint on September 11, 1998.

### B.    Exhaustion of Administrative Remedies

#### 1.    Background

The exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court.  See Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action").  There is, however, no absolute requirement of exhaustion in the Court of International Trade in non-classification cases.  See Alhambra Foundry Co. v. United States, 12 CIT 343, 346-47, 685 F. Supp. 1252, 1255-56 (1988).  Section 2637(d) of Title 28 directs that "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  By its use of the phrase "where appropriate," Congress vested discretion in the Court to determine the circumstances under

which it shall require the exhaustion of administrative remedies. See Cemex, S.A. v. United States, 133 F.3d 897, 905 (Fed. Cir. 1998). Therefore, because "each exercise of judicial discretion in not requiring litigants to exhaust administrative remedies," the Court is authorized to determine proper exceptions to the doctrine of exhaustion. Alhambra Foundry, 12 CIT at 347, 685 F. Supp. at 1256 (citing Timken Co. v. United States, 10 CIT 86, 93, 630 F. Supp. 1327, 1334 (1986) rev'd in part on other grounds Koyo Seiko Co. v. United States, 20 F.3d 1156 (Fed. Cir. 1994)).

In the past, the Court has exercised its discretion to obviate exhaustion where: (1) requiring it would be futile, see Rhone Poulenc, S.A. v. United States, 7 CIT 133, 135, 583 F. Supp. 607, 610 (1984) ("it appears that it would have been futile for plaintiffs to argue that the agency should not apply its own regulation"), or would be "inequitable and an insistence of a useless formality" as in the case where "there is no relief which plaintiff may be granted at the administrative level," United States Cane Sugar Refiners' Ass'n v. Block, 3 CIT 196, 201, 544 F. Supp. 883, 887 (1982); (2) a subsequent court decision has interpreted existing law after the administrative determination at issue was published, and the new decision might have materially affected the agency's actions, see Timken, 10 CIT at 93, 630 F. Supp. at 1334; (3) the question is one of law and does not require

further factual development and, therefore, the court does not invade the province of the agency by considering the question, see id.; R.R. Yardmasters of Am. v. Harris, 721 F.2d 1332, 1337-39 (D.C. Cir. 1983); and (4) the plaintiff had no reason to suspect that the agency would refuse to adhere to clearly applicable precedent. See Philipp Bros., Inc. v. United States, 10 CIT 76, 79-80, 630 F. Supp. 1317, 1321 (1986).

## 2.   Contentions of the Parties

Consolidated Bearings asserts that the exhaustion doctrine does not apply to the case at bar because the circumstances of the case qualify as an exception. Specifically, Consolidated Bearings maintains that it had no reason to expect that Commerce would deny application of 19 U.S.C. § 1675(a)(2) to its entries. See Pl.'s Reply at 17. Alternatively, Consolidated Bearings contends that the issue at hand is of purely legal nature that requires no further agency involvement. See id. at 19-23.

Commerce alleges that the "purely legal" exception: (1) is a "weak one," Def.'s Mem. at 25-26 (citing Aramide Maatschappij V.o.F. v. United States, 19 CIT 1095, 1098 n.4, 901 F. Supp. 353, 357 n.4 (1995)); (2) does not apply to the case at bar, see id. at 24-26; and (3) would allow Consolidated Bearings to introduce, under the circumstances of the case, evidence that would be

otherwise precluded from being considered by the court.[2]  See id. at 26.


### 3.   Analysis

The circumstances of the case at bar qualify for the "pure question of law" exception.[3]  The requirements for the "pure question of law" exception, initially ambiguous, see, e.g., Aramide Maatschappij, 19 CIT at 1098, 901 F. Supp. at 357, were markedly delineated by a number of cases.  See Saarstahl AG v. United States, 20 CIT 1413, 1420, 949 F. Supp. 863, 869 (1996); Timken Co. v. United States, 15 CIT 658, 659-60, 779 F. Supp. 1402, 1404-05 (1991); Budd Co., Wheel & Brake Div. v. United States, 15 CIT 446, 452, 773 F. Supp. 1549, 1555 (1991); Seattle Marine Fishing Supply Co. v. United States, 12 CIT 60, 74, 679 F. Supp. 1119, 1130 (1988); Hercules, Inc. v. United States, 11 CIT 710, 735, 673 F. Supp. 454, 476 (1987); Rhone Poulenc, S.A., 7 CIT at

---

[2] See note 1.

[3] Consolidated Bearings' argument that the case qualifies for the "clearly applicable precedent" exception because Consolidated Bearings did not expect Commerce to refuse the application of 19 U.S.C. § 1675(a)(2) lacks merit.  Consolidated Bearings conflates substantive and procedural hurdles.  The question of whether Commerce refused to apply 19 U.S.C. § 1675(a)(2) is a substantive, not procedural issue.  In essence, Consolidated Bearings asks this Court to establish that the application of 19 U.S.C. § 1675(a)(2) is the only alternative procedurally in order so the Court could examine whether the very same section is not the only alternative substantively.

136, 583 F. Supp. at 611.  Specifically, the following non-exhaustive list of requirements is contemplated: (a) in order to qualify for the exception, plaintiff shall raise a new argument; (b) this argument shall be of purely legal nature; (c) the inquiry shall require neither further agency involvement nor additional fact finding or opening up the record; and (d) the inquiry shall neither create undue delay nor cause expenditure of scarce party time and resources.  See id.

In view of these requirements, Consolidated Bearings is correct in its conclusion that

> [t]his case presents a pure legal issue that fits squarely within this exception.  . . .  [The question posed] requires only an examination of [19 U.S.C. § 1675(a)(2)] and employment of the traditional tools of statutory construction.  It does not . . . require the application of any special . . . expertise [by Commerce] or the development of a special factual record either before or after the Court's consideration of the issue.

Pl.'s Reply at 20, accord McKart v. United States, 395 U.S. 185, 197-99 (1969) (addressing the issue of the relative areas of expertise of courts and agencies).


## III. 19 U.S.C. § 1675(a)(2) AND DIFFERENT DUMPING MARGINS ASSIGNED TO MANUFACTURER AND RESELLER

### A.    Standard of Review

Section 2640(e) of Title 28 provides that "[i]n any civil action not specified in this section, the [court] shall review the

matter as provided in [5 U.S.C. § 706 (1994)]."   28 U.S.C. §
2640(e) (1994).  Because Section 2640 does not specifically address
civil actions filed under 28 U.S.C. § 1581(i), the court must
review the case at bar under the general standard and "hold
unlawful and set aside agency action, findings, and conclusions
found to be . . . arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law . . . ."   5 U.S.C. §
706(2)(A).

It is well-settled that the arbitrary and capricious standard
of review is not merely deferential to agency action, but the most
deferential standard of review.  See In re Gartside, 203 F. 3d
1305, 1312 (Fed. Cir. 2000) (noting that "[b]ecause this [arbitrary
and capricious] standard is generally considered to be the most
deferential . . . standard[] of review, . . . the reviewing court
analyzes only whether a rational connection exists between the
agency's factfindings and its ultimate action") (citations
omitted).   Therefore, the court must uphold the agency's actions
unless Commerce's conclusion was plainly unreasonable or
irrational.  See Boltex Mfg. Co. v. United States, 2000 Ct. Intl.
Trade LEXIS 119 (Sep. 8, 2000).

## B. Background

On September 9, 1997, Commerce instructed Customs to liquidate

entries of the merchandise produced by FAG Kugelfischer and imported by certain importers, the list of which did not include Consolidated Bearings, at a certain "manufacturer's" rate.[4]  See Pl.'s Br., Ex. 6.  Almost a year later, on August 4, 1998, Commerce sent the Liquidation Instructions to Customs requiring Customs to liquidate the merchandise that was: (1) produced in Germany; (2) imported by any importer; and (3) still remained unliquidated after the application of prior liquidation instructions including that of September 9, 1997, "at the deposit rate required at the time of entry of the merchandise."  Id., Ex. 7.  Under the Liquidation Instructions, Customs had to assess Consolidated Bearings' entries at the rate much higher than the "manufacturer's" rate determined by Commerce for FAG Kugelfischer.

### C.    Contentions of the Parties

Consolidated Bearings maintains that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Pl.'s Br. at 18-20. Consolidated Bearings asserts that 19 U.S.C. § 1675(a)(2) requires

---

[4] While there were two types of rates involved, that is, rates applicable to cylindrical roller bearings and those applicable to ball bearings, the argument and the discussion is analogous in both cases.  The Court, therefore, does not address the specific numbers but rather treats the issue of general discrepancy in assessment of "deposit" rates and their respective "manufacturer's" rates, the discrepancy applicable to the entries of each type of bearings.

that antidumping duties be assessed on an importer's entries at the manufacturer's rate if: (a) the importer purchased the merchandise from a reseller that does not have its own cash deposit rate; (b) Commerce conducted an administrative review involving the merchandise; and (c) Commerce assigned a dumping margin for the manufacturer but not the reseller. See Pl.'s Reply at 20. Consolidated Bearings contends that acting otherwise would be arbitrary and capricious in view of the fact that, according to Consolidated Bearings, Commerce's determinations in the Final Results, 56 Fed. Reg. 31,692, and the Amended Final Results, 62 Fed. Reg. 32,755, did not address the issue of potential difference in assessment of "manufacturer" and reseller's margins. See id. at 24-25. In addition, Consolidated Bearings asserts that Commerce unlawfully circumvented the notice and comment procedure by adopting the rule reflected in the Liquidation Instructions, thus defying Consolidated Bearings' right to procedural due process. See id. at 33-36.

Commerce argues that the Liquidation Instructions were in accordance with law and that it employed a rational basis reflecting a new Commerce policy that was properly implemented. See Def.'s Mem. at 27-39. Commerce also maintains that the Liquidation Instructions were not subject to the notice and comment requirement. See id. at 40-46. Finally, Commerce states that its

actions could not violate Consolidated Bearings' right to procedural due process because Consolidated Bearings has no right to continued importation.  See id. at 43-44.


### D.   Analysis

#### 1.   Procedural Due Process

Commerce asserts that Consolidated Bearings' Fifth Amendment Due Process rights could not have been violated because Consolidated Bearings does not have a protected property interest in its right to the continued importation of its merchandise.  See id.  Commerce points out that "no one has a Congressionally untouchable right to the continued importation of any product." Id. (quoting Arjay Assocs., Inc. v. Bush, 891 F.2d 894 (Fed. Cir. 1989)).

It is impossible to comprehend how an importer's lack of vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise already imported.  The Court shares Consolidated Bearings' bewilderment, see Pl.'s Reply at 34-36, and shall not entertain Commerce's argument since it fails to differentiate between substantive and procedural Due Process claims

and lacks any merit.[5]

### 2. Notice and Comment Requirement

Consolidated Bearings maintains that the Liquidation Instructions were effectively a rule within the meaning of the Administrative Procedure Act ("APA") and, therefore, subject to notice and comment procedure applicable to the rule making. See Pl.'s Reply at 33-34.

The definition of a "rule" within the meaning of the APA appears at 5 U.S.C. § 551(4) (1994) and reads as follows:

> "[R]ule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . .

Detailed requirements of the process of rule making are provided in 5 U.S.C. § 553 (1994) and include notice and comment procedural requirements. See 5 U.S.C. § 553(b),(c). The statute sets very narrow parameters for an agency to properly dispense with the requirements. See 5 U.S.C. § 553(b).

---

[5] This Court has pointed out the very same mistake to Commerce on previous occasions. See Transcom, Inc. v. United States, 24 CIT ___, ___, 121 F. Supp. 2d 690, 707 (2000); Transcom, Inc. v. United States, 22 CIT ___, ___, 5 F. Supp. 2d 984, 990 (1998) rev'd on other grounds, Transcom, Inc. v. United States, 182 F.3d 876 (Fed. Cir. 1999). Obviously, to no avail.

The Liquidation Instructions at issue read as follows:

If [Customs is] still suspending liquidation on [those] entries of AFBs from Germany during the period 11/9/88 through 4/30/90 after applying all of the above liquidation instructions [including that of September 9, 1997, Customs] should now liquidate such entries at the deposit rate required at the time of entry of the merchandise.

Pl.'s Br., Ex. 7.

Had Commerce intended for the language of the Liquidation Instructions to set out Commerce's new policy, Commerce's action would clearly qualify as a rule and be subject to the notice and comment procedure detailed in 5 U.S.C. § 553. The Court, however, agrees with Commerce that the extreme specificity of the language employed, particularly: (a) the designation of AFBs among all other types of merchandise; (b) the designation of German origin of the merchandise; (c) the designation of the exact time of importation of the merchandise; and (d) the statement narrowing the applicability of the Liquidation Instructions to the merchandise which liquidation was still suspended after application of all prior instructions, evinced Commerce's desire to "issue[] importer-specific liquidation instructions for [specific] merchandise," see Def.'s Mem. at 41, rather than to set out a general rule providing that, "under the antidumping law, when an importer purchases a particular manufacturer's merchandise from a reseller that does not have its own cash deposit rate[,] . . . antidumping duties will be

assessed on the importer's entries at [the] cash deposit rate instead of at the rate determined for the manufacturer . . . ." Pl.'s Reply at 33-34.

Therefore, the notice and comment requirements contained in 5 U.S.C. § 553 are inapplicable to the issuance of the Liquidation Instructions.

### 3. Statement of Basis and Arbitrary and Capricious Act

Both parties treat the questions of: (a) whether Commerce properly explained the basis for the Liquidation Instructions; and (b) whether Commerce's action was arbitrary and capricious, as two independent issues. See Pl.'s Reply at 24-25, 30–33, Def.'s Mem. at 27-35, 38-40. The determination of one, however, is inseparable from the other.

The court will uphold Commerce's actions unless Commerce's conclusion is unreasonable or irrational. See Boltex Mfg., 2000 Ct. Intl. Trade LEXIS 119.

> The reasoning process required for a rational course of conduct requires more than an articulation of the factors considered by [an] agency. When [undertaking certain conduct], the agency must explain how those considered factors justify the [conduct taken]. The gap between the facts and the conclusion must be filled.

Madison Metro. Sch. Dist. v. School Dist. Boundary Appeal Bd., 1998

Wisc. App. LEXIS 1200 (Wis. Ct. App. 1998) (quoting <u>Kammes v.</u>
<u>Mining Inv. & Local Impact Fund Bd.</u>, 340 N.W. 2d 206, 213 (Wis. Ct.
App. 1983).

Therefore, Commerce's action was arbitrary and capricious if
Commerce failed to explain the basis for the Liquidation
Instructions at issue.

### a.    Insufficiency of Explanations
###       Provided by Commerce

Commerce maintains that it properly provided the reasoning for
the Liquidation Instructions.        <u>See</u> Def.'s Mem. 38-40.
Specifically, Commerce points to three documents made public during
the review.

The first document Commerce cites to is the <u>Notice</u>, 55 Fed.
Reg. 19,093, which language states that Commerce would "instruct
[Customs] to assess antidumping . . . duties . . . at a rate equal
to the cash deposit" if no request for a review is received.  As
discussed <u>supra</u>, this statement cannot lend support to Commerce's
position because: (a) requests for review were received; and (b)
this general default language cannot qualify as an explanatory
statement disclosing Commerce's intent to specifically assess the
merchandise by FAG Kugelfischer and Consolidated Bearings' entries
of merchandise by FAG Kugelfischer at different rates.

The second document that Commerce relies upon is <u>Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany</u> ("<u>Preliminary Results</u>"), 56 Fed. Reg. 11,200 (Mar. 15, 1991). In this document Commerce stated the following:

> Torrington, the petitioner, has alleged that bearings produced in Germany by SKF Sverige AB have been exported to the United States through SKF's Austrian affiliates, SKF Steyr GmbH and Steyr Walzlager GmbH, and that these sales have not been reported to [Commerce] by SKF. SKF claims that there have been no U.S. sales of merchandise subject to these orders that were made by its Austrian affiliates during the period of review. Because the evidence submitted by Torrington in support of its allegations is inadequate, we have no reason to believe that SKF submitted an incomplete response.

<u>Id.</u> at 11,202.

Commerce chooses to read this language as: (a) an axiomatic statement that an importer must submit evidence to Commerce to support the importer's allegations that merchandise sold to third countries was sold with the knowledge that merchandise was destined for the United States; and, moreover, (b) a statement disclosing Commerce's intent to specifically[6] assess the merchandise by FAG

_____

[6] It shall be particularly stressed that this part of discussion addresses solely Commerce's desire to assess specific rates for FAG Kugelfischer and Consolidated Bearings. Had Commerce intended to create a general regime, Commerce's action would be

Kugelfischer and Consolidated Bearings' entries of merchandise by
FAG Kugelfischer at different rates.   See Def.'s Mem. at 38.
Trying to explain the logical gap between such Commerce's intent
and the actual language used in the Preliminary Results, Commerce
points out that the Court should "uphold a decision of less than
ideal clarity if the agency's path may reasonably be discerned."
Id. at 39 (quoting Humane Soc. of United States v. Clinton, 23 CIT
___, ___, 44 F. Supp. 2d 260, 271 (1999) (quoting, in turn, Motor
Vehicle Mfr. Ass'n of United States, Inc. v. State Farm Mut. Auto.
Ins., Co., 463 U.S. 29, 43 (1983)).

While the Court agrees with the premise that each agency
statement cannot be expected to present an example of clarity, the
Court shares Consolidated Bearings' anxiety over the path that
Commerce took to connect these two utterly unrelated propositions.
Compare Madison Metro. Sch. Dist., 1998 Wisc. App. LEXIS 1200.

Finally, Commerce relies on the language contained in the
Final Results, 56 Fed. Reg. 31,692.  See Def.'s Mem. at 38-40.  The
language Commerce cites addresses the following: (a) the assessment
of merchandise imported from Japan by Peer International, a
reseller unrelated to Consolidated Bearings; and (b) Commerce's

_____

invalid for failure to observe the notice and comment requirements
considered supra.

methodology of calculating: (1) purchase price sales; (2) exporter's sales price sales; (3) sales for companies utilizing the price list option of reporting information; and (4) entries that passed through a foreign trade zone before entry into the United States. Id. Commerce concludes that these statements should have been read and understood as a statement disclosing Commerce's intent to specifically assess the merchandise by FAG Kugelfischer and Consolidated Bearings' entries of merchandise by FAG Kugelfischer at different rates.

Commerce's logic escapes this Court. A discussion of merchandise imported by an unrelated reseller from an unrelated country could hardly be interpreted as providing any clear default criterion, much less a criterion specifying the circumstances under which Commerce would assess at different rates the merchandise by FAG Kugelfischer and Consolidated Bearings' entries of merchandise by FAG Kugelfischer. Similarly, a spelled out set of particular calculations cannot be read as providing for another mode of calculation in an unrelated scenario without delineating such other calculation and scenario with reasonable clarity. Except in the rarest circumstances, a failure to directly address an issue cannot qualify or be interpreted as a statement. See generally, Mayers v. INS, 175 F.3d 1289 (11th Cir. 1999); Henderson v. INS, 157 F.3d 106

(2nd Cir. 1998); <u>Maria v. McElroy</u>, 68 F. Supp. 2d 206 (E.D.N.Y. 1999).   Therefore, none of the three sources on which Commerce relies specified the basis for Commerce's decision to assess the merchandise by FAG Kugelfischer and Consolidated Bearings' entries of merchandise by FAG Kugelfischer at different rates.

### b.    Other Deficiencies in Commerce's Actions

The Liquidation Instructions issued by Commerce on August 4, 1998, read as follows:

> If [Customs is] still suspending liquidation on [those] entries of AFBs from Germany during the period 11/9/88 through 4/30/90 after applying all of the above liquidation instructions [including that of September 9, 1997, Customs] should now liquidate such entries at the deposit rate required at the time of entry of the merchandise.

Pl.'s Br., Ex. 7.

The Court sees a few problems with Commerce's action. Considering that on September 9, 1997, Commerce already instructed Customs to liquidate certain entries subject to the review at certain rates, <u>see</u> Pl.'s Br., Ex. 6, it is entirely unclear to this Court why, almost a year later, Commerce felt compelled to issue the Liquidation Instructions at issue if, as Commerce now contends, the conclusions contained in these Liquidation Instructions were already self-evident from the very same record and from the previously issued September 9, 1997, instructions.

Furthermore, the examination of the particular language employed in the Liquidation Instructions prompts the Court to conclude that Commerce's use of the subjunctive mood, specifically Commerce's choice to begin the directive with the word "if," demonstrates that Commerce indeed was doubtful whether the conclusions contained in the Liquidation Instructions were either reasonably discernible from the record that Commerce compiled or in accord with its September 9, 1997, instructions.

Such action by Commerce shows that Commerce contemplated a scenario under which certain entries of AFBs from Germany, including the merchandise manufactured by FAG Kugelfischer, could have been liquidated prior to or on August 3, 1998, (the day prior to the date of issuance of the Liquidation Instructions) at one rate (that is, the rate provided for in the September 9, 1997, instructions) while other entries, identical to the previously-described entries in every respect but yet unliquidated as of the date of issuance of the Liquidation Instructions, became subject to entirely different rate on September 4, 1998.

Subsection 1675(a)(2) of Title 19 governs the procedure for determination of antidumping duties and provides guidelines for

calculations, bond requirements and time frames.[7]  See 19 U.S.C. §
1675(a)(2) (1994).   The subsection ends with the statement that
"[t]he determination [made in accordance with these guidelines]
shall be the basis for the assessment of . . . antidumping duties
on entries of merchandise covered by the determination . . . ."
See 19 U.S.C. § 1675(a)(2)(C).   Nowhere does the statute provide
for Commerce's right to reassessment or redetermination.   An entity
dealing in merchandise that is covered by a properly conducted
determination and subject to the duties assessed accordingly,
should be able to rely on such assessment without apprehension that
the determining agency would change its mind nearly a year later
and reform the properly assessed rates.   Indeed, such whimsical
agency conduct manifests lack of a rational connection between
Commerce's initial fact findings and its ultimately inconsistent
course of actions.   Compare In re Gartside, 203 F. 3d at 1312.

_____

[7] The Court does not reach the merits of Consolidated
Bearings' claim that 19 U.S.C. § 1675(a)(2) requires that
antidumping duties be assessed on an importer's entries at the
manufacturer's rate if: (1) the importer purchased the merchandise
from a reseller that does not have its own cash deposit rate; and
(2) Commerce conducted an administrative review involving the
merchandise and assigned a dumping margin for the manufacturer but
not the reseller.   See Pl.'s Reply at 20.   Because it is
uncontested that acting under the mandate of 19 U.S.C. §
1675(a)(2), Commerce reached a determination, see Final Results, 56
Fed. Reg. 31,692, and  Amended Final Results, 62 Fed. Reg. 32,755,
and, in accordance with such determination issued its September 9,
1997, liquidation instructions, the Court addresses solely the
issue of discrepancy in assessments under the September 9, 1997
liquidation instructions and the Liquidation Instructions at issue.

Based on the foregoing, the Court finds the Liquidation Instructions issued by Commerce on August 4, 1998, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  See 5 U.S.C. § 706(2)(A).

## CONCLUSION

This case is remanded to Commerce to: (a) annul the Liquidation Instructions issued by Commerce on August 4, 1998; and (b) take further actions not inconsistent with this opinion.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:     June 5, 2001
           New York, New York