**Slip Op. 03-106**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| RENESAS TECHNOLOGY AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MICRON TECHNOLOGY, INC., <br><br> Defendant-Intervenor. | Court No. 00-00114 |

[Plaintiff's motion for summary judgment is granted; liquidation instructions issued by U.S. Department of Commerce are remanded.]

Dated: August 18, 2003

McDermott, Will & Emery (David J. Levine) for plaintiff Renesas Technology America, Inc.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Patrick V. Gallagher, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for defendant United States.

Hale & Dorr, LLP (Michael D. Esch) for defendant-intervenor Micron Technology, Inc.

**OPINION**

**GOLDBERG, Senior Judge**: Plaintiff Renesas Technology America,

Inc.[1] ("Renesas"), moves for summary judgment upon the agency record pursuant to USCIT R. 56.1, contesting the issuance of liquidation instructions contained in message numbers 9305211 and 9305212 ("Liquidation Instructions") by the U.S. Department of Commerce ("Commerce") to the U.S. Customs Service[2] ("Customs"), dated November 1, 1999. The Liquidation Instructions ordered the liquidation of Renesas's entries of Dynamic Random Access Memory semiconductors of one megabit or above ("DRAMs") at the manufacturer's cash deposit rate rather than the rates determined for the manufacturer during the administrative reviews of May 6, 1996 and January 7, 1997.

For the reasons that follow, the Court holds that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i).

---

[1] Plaintiff, formerly known as Hitachi Semiconductor (America), Inc., has changed its name to Renesas Technology America, Inc. See Certificate of Amendment to the Certificate of Incorporation of Hitachi Semiconductor (America) Inc. (Mar. 31, 2003).

[2] It has since become the U.S. Bureau of Customs and Border Protection per the Homeland Security Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09 (Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4, 2003).

## I. BACKGROUND

Renesas is an importer of Korean DRAMs manufactured by LG Semicon Co., Ltd. ("LG Semicon"), formerly Goldstar Electron Co., Ltd. ("Goldstar"). Renesas purchased DRAMs manufactured by Goldstar from a reseller, and entered numerous shipments in 1993, 1994, and 1995. At the time of entry, an antidumping duty order was in effect covering DRAMs imported by Renesas. See Dynamic Random Access Memory Semiconductors of One Megabit and Above from the Republic of Korea, Antidumping Duty Order and Amended Final Determination, 58 Fed. Reg. 27,520 (May 10, 1993). Pursuant to the antidumping order of May 10, 1993, Commerce issued suspension instructions on May 25, 1993 ordering Customs to require Renesas to post cash deposits of estimated antidumping duties applicable to the merchandise at issue, and such deposit was made. These suspension instructions provided deposit rates for all entries at the manufacturer's rate, and did not provide separate rates for importers or resellers. Id. at 27,522.

On June 15, 1994, Commerce initiated an administrative review of imports of DRAMs manufactured by Goldstar and Hyundai Electronics Co., Ltd. ("Hyundai"), another Korean manufacturer of DRAMs, that were imported into the United States from October 29, 1992 through April 30, 1994 ("POR 1"). Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 59 Fed. Reg. 30,770 (June 15, 1994). Upon

conclusion of the administrative review, Commerce determined that the dumping margin for Goldstar was 0.00%. Dynamic Random Access Memory Semiconductors of One Megabit or Above from the Republic of Korea, Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 20,216, 20,222 (May 6, 1996).

On June 15, 1995, Commerce initiated a second administrative review of imports of DRAMs manufactured by LG Semicon and Hyundai that were imported into the United States from May 1, 1994 through April 30, 1995 ("POR 2"). Initiation of Antidumping and Countervailing Duty Administrative Review, 60 Fed. Reg. 31,447 (June 15, 1995). Commerce determined that the dumping margin for LG Semicon was de minimis at 0.01%. Dynamic Random Access Memory Semiconductors of One Megabit or Above from the Republic of Korea, Final Results of Antidumping Duty Administrative Review, 62 Fed. Reg. 965, 968 (Jan. 7, 1997).

Subsequently, Defendant-Intervenor Micron Technology, Inc. ("Micron") filed an action in opposition to the rates determined in POR 1 and POR 2 for LG Semicon. The Court of International Trade and the Court of Appeals for the Federal Circuit sustained the results of the first and second administrative reviews for LG Semicon DRAMs. Micron Technology v. United States, 23 CIT 55, 44 F. Supp. 2d 216 (1999); Micron Technology v. United States, 23 CIT 208, 40 F. Supp. 2d 481 (1999).

In addition, prior to the conclusion of the Micron cases,

Commerce issued its final results for a third administrative review period covering LG Semicon and Hyundai DRAMs that were imported from May 1, 1995 though April 30, 1996 ("POR 3"). During POR 3, Commerce issued instructions to Customs to liquidate entries of LG Semicon and Hyundai DRAMs during that period irrespective of the identity of the importer.

Upon conclusion of the <u>Micron</u> cases, Commerce instructed Customs to assess antidumping duties on Renesas's imports of LG Semicon DRAMs at the manufacturer's cash deposit rate upon entry. Commerce did not instruct Customs to liquidate Renesas's entries at the rates determined for POR 1 or POR 2.

Renesas contests the Liquidation Instructions and moves for summary judgment on the grounds that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and were issued without advance notice to Renesas. Commerce argues that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1581(i). Alternatively, Commerce argues that Renesas has not exhausted its administrative remedies or that otherwise the Liquidation Instructions are rational and in accordance with law.

## II. STANDARD OF REVIEW

Assuming that the Court has jurisdiction pursuant to 28 U.S.C. § 1581(i), 28 U.S.C. § 2640(e) (1994) governs this case. Section 2640(e) establishes the standard of review in an action

brought under 28 U.S.C. § 1581(i), providing that "[i]n any civil action not specified in this section, the Court of International Trade shall review the matter provided in section 706 of title 5." Accordingly, the Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

### III. DISCUSSION

**A. The Court has residual jurisdiction under § 1581(i).**

As a threshold matter, Commerce argues that the Court lacks residual jurisdiction pursuant to 28 U.S.C. § 1581(i). Commerce claims that Renesas had an alternative remedy under § 1581(c). It claims that Renesas could have filed an independent request for an administrative review and/or participated in POR 1 and POR 2 under § 1581(c). Commerce argues that this alternative remedy renders § 1581(i) residual jurisdiction unavailable.

Renesas argues that Commerce's prior practice dictated that the rates determined during the administrative review periods applied to all importers of the subject merchandise. This was the governing practice irrespective of whether the importer filed an individual request for an administrative review. In support of this argument, Renesas points to Consolidated Bearings Company v. United States, 25 CIT __, 166 F. Supp. 2d 580 (2001) and ABC International Traders, Inc. v. United States, 19 CIT 787 (1995).

Additionally, Renesas points to two notices recently published by Commerce. See "Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties," 68 Fed. Reg. 23,954 (May 6, 2003) ("Assessment Policy Notice"); "Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Amendment to Notice of Opportunity To Request Administrative Review," 68 Fed. Reg. 26,288 (May 15, 2003) ("Review Amendment Notice"). Renesas argues that these notices constitute Commerce's admission that the Liquidation Instructions constituted a change from its past practice without notice and that, prior to the issuance of the Liquidation Instructions, entries for a given importer such as Renesas were liquidated at the rate determined for the producer of the subject merchandise in the administrative review.

The merits of this action and the resolution of the jurisdictional issue are intertwined. Pursuant to § 1581(i), the Court does not possess jurisdiction to decide issues relating to antidumping law if review is specifically provided for by other subparagraphs of § 1581. "[I]t is well established that the residual jurisdiction of the court under [sub]section 1581(i) 'may not be invoked when jurisdiction under another [sub]section of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate.'" Consolidated, 25 CIT at __, 166 F. Supp. 2d at 583

(quoting Ad Hoc Comm. of Fla. Producers of Gray Portland Cement
v. United States, 22 CIT 902, 906, 25 F. Supp. 2d 352, 357 (1998)
(internal citation omitted) (emphasis in original)).

In Consolidated, Commerce issued liquidation instructions
that required Customs to assess antidumping duties on the
plaintiff-importer's entries of the subject merchandise at the
cash deposit rates in effect at the time of entry instead of at
the weighted-average rates determined for the subject merchandise
in the amended final results of the administrative review.  The
plaintiff-importer contested the instructions on the grounds that
they were arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law, and requested that Customs
apply the liquidation rates determined in the administrative
review.  The court found that it "[was] appropriate to exercise
residual jurisdiction because jurisdiction under other
subsections of section 1581 [was] not available."  Id. at 583.
The court explained that:

> Commerce's liquidation instructions also are not
> reviewable under subsection 1581(c) because they
> were not part of the Final Results or the Amended
> Final Results.  Rather, such instructions are
> issued after relevant final determinations are
> published and, accordingly, it was impossible for
> [the importer] to contest the instructions as
> required under 19 U.S.C. § 1516a(a)(2)(B)(iii)
> (1994). . . [F]inally, none of the other
> subsections of section 1581 of Title 19 provides a
> viable basis for jurisdiction.  Id.

In the instant case, Commerce did not publish the Liquidation Instructions until November 1, 1999. This was after the final results of POR 1 and POR 2 were published on May 6, 1996 (61 Fed. Reg. 20,216) and January 7, 1997 (62 Fed. Reg. 965), respectively. The Liquidation Instructions changed Commerce's prior instructions in message number 7128114 issued for POR 2, dated May 8, 1997. Those instructions ordered Customs to liquidate "all entries covered by the [Order] at the rates established in the administrative reviews for the three Korean manufacturers: Goldstar, Hyundai, and Samsung." In addition, the reasoning set forth in ABC dictated that in the absence of another or "all other" rate, all importers of the subject merchandise were covered by the review. Thus, it was reasonable for Renesas to assume that its entries would be liquidated at the administrative review rates and that it need not file an independent request for an administrative review pursuant to § 1581(c). Renesas, as an importer of DRAMs covered in POR 1 and POR 2, should have been able to rely on such assessment without apprehension that Commerce would change its mind later and change the properly assessed rates. Consolidated, 25 CIT at __, 166 F. Supp. 2d at 593.

Likewise, in ABC, the court held that the manufacturers' rates determined in the administrative review applied to the

plaintiff-reseller since there was no other rate that could have

applied:

> Absent an applicable reseller, or even an 'all other' rate, [the plaintiff] should have known that it would have been assigned the only existing rates, that is, the manufacturers' duty rates determined in the final results of the various administrative reviews. The fact that no review was requested to establish rates for the resellers at issue, or for ABC individually, does not compel Commerce to apply the automatic assessment regulation in this case. In fact, Commerce is compelled to apply the manufacturers' rates as determined on review, because no reseller rates exist. ABC, 19 CIT at 790.

Similarly, at the time of entry, a § 1581(c) request by Renesas

was wholly unnecessary, thereby failing to provide an adequate

remedy under the reasoning set forth in ABC. Finally, Commerce

does not present the argument that any other subsection of § 1581

provided Renesas with an adequate remedy, and the Court finds no

other subsection of § 1581 applicable.

Accordingly, the Court exercises jurisdiction over the

matter under 28 U.S.C. § 1581(i).

**B. The exhaustion doctrine does not dictate dismissal of Renesas's claim.**

Commerce argues that the exhaustion doctrine applies since

Commerce never had an opportunity to properly consider Renesas's

argument. This was allegedly because Renesas never presented the

issue to Commerce in the appropriate administrative proceeding.

Renesas asserts that the exhaustion doctrine does not apply to

the instant case because its circumstances qualify it as an exception. Specifically, Renesas maintains that it had no reason to expect that Commerce would refuse to apply the manufacturer's rates to its entries. Alternatively, Renesas claims that the issue at hand is of a purely legal nature that requires no further agency involvement.

The exhaustion doctrine requires that a party present its claims to the relevant administrative agency for the agency's consideration before bringing these claims to the Court. Consolidated, 25 CIT at __, 166 F. Supp. 2d at 586 (citing Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946)). However, there is no absolute requirement of exhaustion in the Court of International Trade in non-classification cases. Id. (citing Alhambra Foundry Co. v. United States, 12 CIT 343, 346-47, 685 F. Supp. 1252, 1255-56 (1988)). Thus, the Court has the discretion to determine proper exceptions to the doctrine of exhaustion. Id.

Exceptions to the requirement of exhaustion have been found where requiring it (1) would be futile or (2) would be "inequitable and an insistence of a useless formality." See Rhone Poulenc, S.A. v. United States, 7 CIT 133, 135, 583 F. Supp. 607, 610 (1984); United States Canes Sugar Refiners' Ass'n v. Block, 3 CIT 196, 201, 544 F. Supp. 883, 887 (1982). A second exception exists where the "question is one of law and does not

require further factual development and, therefore, the court does not invade the province of the agency by considering the question." See id.

The circumstances in the instant case fall under the "pure question of law" exception to the exhaustion doctrine. In Consolidated, the court set out the requirements for the "pure question of law" exception as follows: (a) plaintiff's argument is new; (b) this argument is of a purely legal nature; (c) the inquiry shall require neither further agency involvement nor additional fact finding or opening up the record; and (d) the inquiry shall neither create undue delay nor cause expenditure of scarce time and resources. See Consolidated, 25 CIT at __, 166 F. Supp. 2d at 587. This instant case presents a pure question of law that fits squarely within this exception for the reasons that follow: (a) Renesas's presents a new argument to the Court; (b) the inquiry involves a question of law — namely, whether Commerce's liquidation instructions are arbitrary and capricious; (c) the inquiry does not require any special expertise by Commerce and/or the development of a special factual record either before or after the Court's consideration of the issue; and (d) for the reason mentioned in part (c), judicial inquiry here will not create undue delay or unnecessary expenditure. Id.

**C.   The Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.**

Renesas argues that the Liquidation Instructions are arbitrary, capricious, and contrary to law, and were issued without advance notice to Renesas.  Commerce contends that the Liquidation Instructions are rational and in accordance with law, and were issued within the scope of its authority.

Commerce argues that since Renesas did not argue that LG Semicon knew its goods were destined for export to the United States, Renesas is not covered by the administrative reviews.  In support of its argument, Commerce refers to the "knowledge test" upheld in NSK Ltd. v. United States, 190 F. 3d 1321, 1334 (Fed. Cir. 1999).  Commerce's argument is flawed.  The knowledge test that was upheld in NSK only applies to the producer, LG Semicon, and speaks nothing of the application of the administrative reviews to the importer, Renesas.  See generally id.  The knowledge test as it stands in NSK is inapplicable to this case.  Therefore, Commerce asks the Court to hold that the knowledge test stands for the proposition that the importer is only covered by an administrative review if the producer knew that its goods were destined for export to the United States.  See Defendant's Response in Opposition to Plaintiff's Motion for Judgment upon the Agency Record, 20.  However, Commerce has not spoken of this application of the knowledge test in the past.  Additionally, Commerce failed to speak of this application of the knowledge test in the liquidation instructions issued in POR 1 and POR 2

and, thereby, issued the contested instructions without explaining the basis for its action. Therefore, this application of the knowledge test was unwarranted. See Consolidated, 25 CIT at __, __, 166 F. Supp. 2d at 589, 590 ("If the Department of Commerce fails to explain the basis for its liquidation instructions, Commerce's action is arbitrary and capricious.").

In Consolidated, the court found arbitrary and capricious liquidation instructions that changed Commerce's previous practice of liquidating at the rate determined in the administrative review but instead liquidated at the cash deposit rate. The court found the instructions arbitrary, in part, because they were not clear to the plaintiff and were completely contrary to instructions that were issued previously. The court saw the following problems with Commerce's action:

> Considering that on September 9, 1997, Commerce already instructed Customs to liquidate certain entries subject to the review at certain rates, it is entirely unclear to this Court why, almost a year later, Commerce felt compelled to issue the liquidation instructions at issue if, as Commerce now contends, the conclusions contained in these liquidation instructions were already self-evident from the very same record and from the previously issued September 9, 1997, instructions. . . . Such action by Commerce shows that Commerce contemplated a scenario under which certain entries of the [subject merchandise], including [the merchandise] manufactured by the [plaintiff-importer] could have been liquidated at one rate prior to the issuance of the contested liquidation instructions and an entirely different rate after the issuance of [said] instructions. Id. at 592.

The Court finds the same problem with the Liquidation Instructions in the instant case. Commerce issued new instructions on November 1, 1999 and, thereby, changed its past practice of liquidating at "the rate established for the most recent period for the manufacturer of the merchandise." 61 Fed. Reg. 20,216, 20,222. The Liquidation Instructions were issued without notice to Renesas, which had no reason to know that Commerce would change the instructions and require it to request a separate and independent administrative review. Commerce's past practice and the reasoning set forth in ABC and Consolidated gave Renesas a reasonable expectation that their entries were covered by the rates established in POR 1 and POR 2, and therefore that they would not need to file an independent request for an administrative review. The Assessment Policy Notice and Review Amendment Notice appear to acknowledge Commerce's past liquidation practice. See 68 Fed. Reg. 23,954; 68 Fed. Reg. 26,288. Renesas had no reason to know that their entries were not covered by the rates determined in POR 1 and POR 2. Commerce failed to explain the basis for the Liquidation Instructions at issue and failed to provide Renesas with notice of the change. See Consolidated, 25 CIT at __, 166 F. Supp. 2d at 590. Therefore, the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that jurisdiction attaches under 28 U.S.C. § 1581(i) and that Renesas's claim is not precluded by the exhaustion doctrine.  In addition, for the reasons stated herein, the Court finds that the Liquidation Instructions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Pursuant to this opinion, this case is remanded to Commerce to (1) rescind the Liquidation Instructions and (2) issue new instructions ordering Customs to liquidate and/or re-liquidate Renesas's entries at the antidumping rates determined for LG Semicon during POR 1 and POR 2.

**Richard W. Goldberg**
**Senior Judge**


**Date:      August 18, 2003**
**          New York, New York**