**CONSOLIDATED BEARINGS COMPANY, Plaintiff–Cross Appellant,**

v.

**UNITED STATES, Defendant–Appellant.**

Nos. 02–1634, 02–1635.

United States Court of Appeals, Federal Circuit.

Oct. 29, 2003.

Rehearing Denied Dec. 30, 2003.

Christopher R. Wall, Pillsbury Winthrop LLP, of Washington, DC, argued for plaintiff-cross appellant.

David Silverbrand, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief was David M. Cohen, Director. Of counsel were John D. McInerney, Patrick V. Gallagher, and Berniece A. Browne, Attorneys, United States Department of Commerce, of Washington, DC.

Michael D. Esch, Hale and Dorr LLP, of Washington, DC, for amicus curiae Micron Technology, Inc. With him on the brief was Cris R. Revaz.

David J. Levine, McDermott, Will & Emery, of Washington, DC for amicus curiae Hitachi Semiconductor (America) Inc.; and Michael E. Roll, Katten Muchen Zavis Rosenman, of Los Angeles, California, for amicus curiae Hitachi High Technologies America, Inc.

Before CLEVENGER, RADER, and PROST, Circuit Judges.

RADER, Circuit Judge.

When the United States Court of International Trade reached a final decision in a complex case involving antidumping liquidation procedures for imports, both Defendant–Appellant United States and Plaintiff–Cross Appellant Consolidated Bearings Company (Consolidated) appealed. *Consolidated Bearings Co. v. United States*, 02–72 (CIT July 24, 2002) (*Consolidated IV*). After finding it possessed jurisdiction, *Consolidated Bearings Company v. United States*, 166 F.Supp.2d 580 (CIT 2001) (*Consolidated I*), the trial court's decision in *Consolidated IV* affirmed the United States Department of Commerce's (Commerce) April 1, 2002 *Final Results of Redetermination Pursuant to Court Remand (Remand II)*.[1]

Because no other subsection of 28 U.S.C. § 1581 was or could have been a basis for jurisdiction in this case, trial court was correct in finding jurisdiction under section 1581(i). In addition, this court agrees with the trial court's holding that the exhaustion doctrine does not apply in this case, but does not agree that

1. In *Consolidated I*, the United States Court of International Trade remanded the case to Commerce, which resulted in Commerce's November 29, 2001 *Final Results of Redetermination Pursuant to Court Remand (Remand I)*. The Court of International Trade reviewed *Remand I* and issued a decision in *Consolidated Bearings Company v. United States*, 182 F.Supp.2d 1380 (CIT 2002) (*Consolidated II*), which again remanded the case to Commerce resulting in *Remand II*. The Court of International Trade addressed Commerce's action in *Remand II* in its third decision, *Consolidated Bearings Company v. United States*, 02–62 (CIT July 9, 2002) (*Consolidated III*). Commerce filed a motion for clarification of that decision on July 18, 2002, which lead to the Court of International Trade's decision in *Consolidated IV*.

the "pure question of law" exception applies. Finally, because the Court of International Trade erred in interpreting 19 U.S.C. § 1675(a)(2)(C) (2000), this court vacates the judgment below and remands for further proceedings consistent with this opinion.

## I.

Commerce issues antidumping duty orders for imported merchandise that is sold in the United States below its fair value and materially injures or threatens to injure a domestic industry. *See* 19 U.S.C. § 1673e (2000); 19 U.S.C. § 1673d (2000). These antidumping duties reflect the difference between the foreign exporter's sales price and the domestic price of the merchandise. *See* 19 U.S.C. § 1673e(a)(1) (2000). Upon entry of merchandise covered by an antidumping order, an importer must make a cash deposit of estimated duties (cash deposit rate). *See* 19 U.S.C. § 1673e(a)(3) (2000).

Under Commerce's accounting system, the actual liquidation of entries subject to an antidumping order may occur years after importation. Before final liquidation, any interested party may request an administrative review of the antidumping duty order. *See* 19 U.S.C. § 1675 (2000). The final results of such a review "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C) (2000). Without a request for administrative review, Com-

merce liquidates the merchandise at the cash deposit rates (i.e., the deposit rates at the time of entry). *See* 19 C.F.R. § 351.212(c)(i) (2003).

In 1989, Commerce issued antidumping duty orders on antifriction bearings (AFBs) from Germany. *See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof from the Federal Republic of Germany,* 54 Fed.Reg. 20,900 (May 15, 1989) (the 1989 orders). Between 1989 and 1997, Consolidated purchased and imported AFBs manufactured in Germany by FAG Kugelfischer Georg Schaefer KgaA (FAG). Consolidated did not purchase the AFBs directly from FAG. Rather, Consolidated imported the AFBs from an unrelated foreign reseller. Upon importation of the AFBs under the 1989 orders, Consolidated paid cash deposits of estimated duties based on the rates assigned to the manufacturer FAG.

In 1990, various domestic importers of AFBs manufactured by FAG requested an administrative review. Commerce initiated the review on June 11, 1990 and published its final results on July 11, 1991.[2] Consolidated did not request or participate in the administrative review. After the Court of International Trade adjudicated some challenges to those final results, Commerce issued its amended final results (the final results).[3] Under these final results, each participating importer of FAG-manufactured AFBs received a new specific duty rate. Information concerning Consolidated's imports and the reseller that

---

**2.** *See Antifriction Bearings (Other Than Tapered Rolled Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom,* 55 Fed.Reg. 23575 (Dep't Commerce June 11, 1990) (initiation of antidumping admin. review); *Antifriction Bearings (Other Than Tapered Rolled Bearings) and Parts Thereof From the Federal*

*Republic of Germany,* 56 Fed.Reg. 31692 (Dep't Commerce July 11, 1991) (final results).

**3.** *See Antifriction Bearings (Other Than Tapered Rolled Bearings) and Parts Thereof From the Federal Republic of Germany,* 62 Fed.Reg. 32755 (Dep't Commerce June 17, 1997) (amended final results).

exports to Consolidated was not presented to Commerce in the administrative review.

In September 1997, the United States Customs Service (Customs) received liquidation instructions from Commerce. These instructions implemented the final results for the liquidation of AFB entries for the participating importers (the 1997 instructions). Because Consolidated was not a party to the administrative review, the final results did not contain a new antidumping rate specifically for Consolidated or the reseller that exports to Consolidated. On August 4, 1998, Customs again implemented liquidation instructions from Commerce. These 1998 instructions directed Customs to liquidate all entries of AFBs from Germany that had not been liquidated by the 1997 instructions. Under the 1998 instructions, Customs liquidated the remaining merchandise at the cash deposit rate in effect at the time of entry. These 1998 instructions required liquidation of Consolidated's entries at the time-of-entry cash deposit rates, which were much higher than the rates for the participating importers under the final results.

Consequently, Consolidated brought this action to challenge the 1998 instructions and compel Commerce to apply the antidumping rates in the final results to Consolidated's entries of AFBs from Germany. Specifically, Consolidated contends that Commerce should apply to Consolidated's entries a rate equal to a weighted-average of the rates established in the final results for FAG-manufactured AFBs. In *Consolidated I*, the Court of International Trade found jurisdiction, found no violation of the exhaustion doctrine, entered judgment on the merits in favor of Consolidated, and remanded the case for Commerce to reassess the antidumping duty. 166 F.Supp.2d at 582–93. The Court of International Trade ultimately affirmed Commerce's actions in *Remand II. See Consolidated VI,* 02–72 at 4.

The Court of International Trade invalidated the 1998 instructions as an unlawful correction or modification of the 1997 instructions. *See Consolidated II,* 182 F.Supp.2d at 1382–83. Commerce expressed its opinion that the trial court was in error. Nevertheless, to comply with the remand order, Commerce annulled the 1998 instructions and used the *ad valorem* rates in the 1997 instructions (from the final results) for liquidation of Consolidated's FAG-manufactured AFB imports. In this appeal, Commerce challenges the trial court's judgment on the merits in *Consolidated I,* and Consolidated challenges the trial court's affirmance of Commerce's second remand determination in *Remand II.* This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2000).

## II.

*Subject Matter Jurisdiction*

■ This court reviews the trial court's subject matter jurisdiction ruling as a legal determination without deference. *See JCM, Ltd. v. United States,* 210 F.3d 1357, 1359 (Fed.Cir.2000). Consolidated sought jurisdiction under title 28's residual jurisdiction provision:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930.

28 U.S.C. § 1581(i) (2000). Section 1581(i) (subsection (i)) supplies jurisdiction only for instances when no other subsection of that section "is or could have been available," unless the other subsection provided no more than a manifestly inadequate remedy. *Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 359 (Fed.Cir.1992) (quoting *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988)).

■ Commerce contends that 28 U.S.C. § 1581(c) (subsection (c)) could have been available to establish jurisdiction in this case if Consolidated had participated in the administrative review that produced the final results. Subsection (c) grants the Court of International Trade jurisdiction over actions brought under section 516A of the Tariff Act of 1930, which includes challenges to the final results of an administrative review by a participant in that review. *See* 28 U.S.C. § 1581(c) (2000); 19 U.S.C. § 1516a(a)(2)(B)(iii) (2000). Subsection (i) specifically states that "[t]his subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable ... by the Court of International Trade under section 516A(a) of the Tariff Act of 1930." 28 U.S.C. § 1581(i) (2000). According to Commerce, Consolidated cannot maintain this action under subsection (i) because it could have brought the same action under subsection (c) if it had joined the adminis-

trative review process. In other words, Commerce asks this court to bar Consolidated from jurisdiction under subsection (i) because it did not participate in the administrative review.

Consolidated, however, did not bring this action to challenge the final results of the administrative review. If that were the case, Commerce's position might have more merit. Consolidated does not object to the final results. Rather Consolidated seeks application of those final results to its entries of AFBs manufactured by FAG. This case involves a challenge to the 1998 instructions, which is not an action defined under section 516A of the Tariff Act. Stated otherwise, in this action, Consolidated challenges the 1998 instructions as a violation of 19 U.S.C. § 1675(a)(2)(C) and as a departure from Commerce's well-established past practice of liquidation. Because Consolidated is not challenging the final results, subsection (c) is not and could not have been a source of jurisdiction for this case.

■ In addition to finding this case outside the jurisdictional grants in subsection (c), this court finds this case squarely within the provisions of subsection (i). Commerce's liquidation instructions direct Customs to implement the final results of administrative reviews. Consequently, an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the "administration and enforcement" of those final results. Thus, Consolidated challenges the manner in which Commerce administered the final results. Section 1581(i)(4) grants jurisdiction to such an action.

Moreover, liquidation instructions direct Customs to impose antidumping duties to protect domestic markets. As a result, an action against those instructions also arises as a challenge to "tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2) (2000). This court, therefore, concludes that the trial court correctly asserted jurisdiction under 28 U.S.C. § 1581(i)(2) and (4).

*Exhaustion of Administrative Remedies*

Proper subject matter jurisdiction does not finish the jurisdictional inquiry. In the Court of International Trade, a plaintiff must also show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine. *See* 28 U.S.C. § 2637(d) (2000) ("the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies"). While enforcing exhaustion requirements as jurisdictional prerequisites, the Court of International Trade also enjoys discretion to identify circumstances where exhaustion of administrative remedies does not apply. *See Cemex, S.A. v. United States,* 133 F.3d 897, 905 (Fed.Cir.1998).

■ Generally, "[t]he doctrine of exhaustion of administrative remedies provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). If a party does not exhaust available administrative remedies, "judicial review of Commerce's actions is inappropriate." *Sharp Corp. v. United States,* 837 F.2d 1058, 1062 (Fed.Cir.1988). Over the years, the Court of International Trade has identified various exceptions to the exhaustion requirement. For instance, in the proceedings below, the trial court identified various exceptions to the exhaustion doctrine, including the "futility" exception and the "pure question of law" exception.

*See Consolidated I,* 166 F.Supp.2d at 586. Ultimately, the court applied the "pure question of law" exception to this case. *See Consolidated I,* 166 F.Supp.2d at 587.

■ The trial court accepted Consolidated's view that "this case presents a pure legal issue that ... requires only an examination of [19 U.S.C. § 1675(a)(2) ] ... It does not ... require the application of any special ... expertise [from Commerce] for the development of a special factual record either before or after the Court's consideration of the issue." *Id.* Consolidated, however, did not argue only that 19 U.S.C. § 1675 requires Commerce to apply the final results to its AFB entries. In addition, Consolidated argues that Commerce violated its well-established prior practice of applying the final results of administrative reviews to importers who did not participate in the review, but import the same merchandise from resellers without their own established antidumping rates. Thus Consolidated alleged that Commerce arbitrarily changed its well-established practice and contravened the reasonable expectations of importers. These allegations require a factual record of Commerce's past practice and an assessment of Commerce's justifications for any departure from that past practice. Statutory construction alone is not sufficient to resolve this case. Accordingly, this court finds that this case does not qualify for the "pure question of law" exception to the exhaustion doctrine.

■ Nevertheless, this court finds that Consolidated did not fail to exhaust its administrative remedies. Because, as noted earlier, Consolidated challenges liquidation instruction practices and not the administrative review itself, its failure to participate in the administrative review does not preclude judicial review. Indeed, the United States could not identify any

administrative process available to challenge liquidation instructions issued by Commerce. The record in this case does not disclose any statutory or regulatory provision that allows a party to challenge the manner in which Commerce implements the final results of an administrative review. Without an administrative procedure to exhaust, this court holds that Consolidated did not violate the exhaustion doctrine. Thus, the trial court properly exercised jurisdiction over the merits of this action.

*Requirements of 19 U.S.C. § 1675(a)(2)(C)*

■ Turning to the merits, "this Court will apply the standard of review set forth in 5 U.S.C. § 706 to an action instituted pursuant to 28 U.S.C. § 1581(i)." *Humane Soc'y of the United States v. Clinton,* 236 F.3d 1320, 1324 (Fed.Cir.2001). In other words, this court reviews the trial court's decision *de novo,* reapplying the same standard utilized by that court. Section 706 of Title 5 of the United States Code states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>> (B) contrary to constitutional right, power, privilege, or immunity;
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

>> (D) without observance of procedure required by law;
>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

The Court of International Trade dismissed Consolidated's allegations that Commerce, by issuing the 1998 instructions, violated Consolidated's Fifth Amendment Due Process rights and the procedural requirements of the Administrative Procedure Act. *Consolidated I,* 166 F.Supp.2d at 589–90. Consolidated does not re-assert those arguments on appeal. Therefore, Commerce's liquidation instructions in this case will only be set aside if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

■ The trial court determined that Commerce's 1998 instructions both violated 19 U.S.C. § 1675(a)(2)(C) and arbitrarily departed from its established past practice. Turning first to the alleged statutory violation, this court reviews statutory interpretation without deference. *See Lynteq, Inc. v. United States,* 976 F.2d 693, 696 (Fed.Cir.1992). The Court of International Trade held that the framework of section 1675(a)(2) does not permit Commerce to reassess antidumping duties after an administrative review and issuance of instructions to implement the results of that review. According to the trial court, the 1998 instructions were an unlawful modification of the rates applied by the 1997 instructions.

Section 1675 sets forth the framework for an administrative review of antidumping duties. This section clearly places the

focus of the administrative review on the *entry* of merchandise. For example, section 1675(a)(2)(A) requires Commerce to "determine ... the normal value and export price (or constructed export price) of each *entry* of subject merchandise, and ... the dumping margin for each such *entry*." 19 U.S.C. § 1675(a)(2)(A) (emphases added).

Thus, antidumping duties ensure that each import reflects correct market values. Once the review sets the market value of the merchandise, the focus shifts to importation of the merchandise, not the character of the merchandise itself. Accordingly, importers of the same merchandise can have different antidumping duties, just as the final results in this case established various importer-specific rates for those who participated in the review. The character of the merchandise does not control the assessment of duties, but the market forces in play at the time of each separate import transaction. The simple fact that one importer imports the same merchandise as another importer does not necessarily lead to the conclusion that they are subject to the same antidumping duties. Because sales prices vary from exporter to exporter and from time to time, separate entries of the same good may have different duties.

During an administrative review, Commerce analyzes the data related to the manufacturer and third-party resellers that export the subject merchandise to the United States. If no information about import transactions with a particular reseller is before Commerce during the review, then the transactions of an importer who imports the subject merchandise from that reseller do not fall within the scope of the review. In *Remand II*, Commerce reasonably explained as follows:

> It is our view that we did not conduct a review of all FAG-produced merchandise

regardless of the exporter or reseller of this merchandise. We initiated this administrative review for FAG and our mandate was to review FAG's pricing practices with respect to its sales of subject merchandise. The mandate did not extend to other parties which may have acquired FAG-produced bearings second- or third-hand and then exported or resold these bearings in the United States. In cases in which resales are beyond the control of the reviewed party, such as FAG, it is our practice to review the pricing practices of the reseller when we are asked to do so. To do otherwise, in our opinion, would permit the circumvention of the antidumping law by allowing the resellers to benefit because they may be dumping to a greater extent than the party under review during the period in question. Therefore, we did not issue the liquidation instructions of August 4, 1998, to the U.S. Customs Service to correct for errors or deficiencies in the September 9, 1997, instructions. Rather, the purpose of the August 4, 1998, instructions was to cover imports not subject to the scope of the September 9, 1997, instructions.

With this framework in mind, section 1675(a)(2)(C) takes on particular significance for this case. That section requires the final results of an administrative review to "be the basis for the assessment of countervailing or antidumping duties on *entries* of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C) (2000) (emphasis added). This subsection requires Commerce to apply the final results of an administrative review to all entries covered by the review. If the review did not examine a particular importer's transaction, then that importer's entries enjoy no statutory entitlement to the rates es-

tablished by the review. The "entries" must be "covered by the determination" to gain entitlement to the review's results as the "basis for the assessment" of duties. *Id.*

Commerce's analysis of one transaction or entry does not necessarily produce rates applicable to a wholly separate and distinct transaction. Subsection 1675(a)(2)(C) requires Commerce to apply the final results to those transactions covered in the review. The subsection neither requires nor precludes Commerce from applying those results to entries outside the review. Because subsection 1675(a)(2)(C) does not compel Commerce to apply the final results of an administrative review to any entries of merchandise that were not covered in the administrative review, this court reverses the contrary holding of the trial court.

The sales practices of the reseller that exports the AFBs to Consolidated were simply not covered by the administrative review. Therefore, Consolidated's imports are not within the scope of the final results or the 1997 instructions. This court is not persuaded by any of Consolidated's arguments that the rates in the final results, and not the cash deposit rates at the time of entry, must apply to Consolidated's imports. Consolidated simply has no statutory entitlement under section 1675(a)(2)(C) to the antidumping rates in the final results over those cash deposit rates.

*Consolidated's Actions*

■ Because title 19 does not afford Consolidated a statutory right to relief, as explained above, Consolidated is left with its argument that Commerce's 1998 instructions arbitrarily departed from its well-established liquidation practices. Consolidated argues that Commerce has consistently, in the past, applied a weighted average of the manufacturer's dumping rates in the final results to an importer that imports merchandise made by the manufacturer from an unaffiliated reseller not covered by the administrative review. Relying on that past practice, Consolidated alleges that it had no reason to participate in the administrative review. It fully expected Commerce to apply a weighted average of the final results to its imports. Thus, Consolidated charges that Commerce's departure was an arbitrary disruption of expectations without notice.

Commerce recognizes that confusion exists with respect to its policy concerning importation from resellers. In this case, Commerce asserts that it was within its discretion, and not an arbitrary departure from established practice, to liquidate Consolidated's entries at the cash deposit rates at the time of entry, often referred to as "automatic liquidation." Recently, Commerce finalized a notice, which "clarifies the Department of Commerce's ... regulation, 19 C.F.R. § 351.212(c), regarding automatic liquidation where a [reseller] exports the merchandise." *See Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties,* 68 Fed.Reg. 23954 (May 8, 2003). According to that clarification, Commerce will not impose automatic liquidation at the existing cash deposit rates on parties that import, from a reseller, merchandise produced by a manufacturer covered by an administrative review. *Id.* Rather, Commerce will determine whether the manufacturer had knowledge that the merchandise sold to the reseller was headed for the United States. If the manufacturer had knowledge of the reseller's sales into the United States, Commerce will apply the manufacturer's rate. If the manufacturer had no such knowledge, Commerce will apply the "all others" rate. *Id.* That clarification applies to all administrative reviews, effective May 1, 2003. *Id.* The clarification does not help resolution of this

case on this record. At most, Commerce's recent policy statements may help identify Commerce's consistent past-practice.

At oral argument, this court asked the parties to identify prior instances where an administrative review was held and Commerce either applied the existing cash deposit rates or the manufacturer's rate in the final results to imports from a reseller not covered by the administrative review. Neither party could identify any specific cases on either side. Further, the record does not contain sufficient evidence to determine Commerce's consistent practice, if any, prior to this case. This court, therefore, finds the record in this case insufficient to facilitate a determination of whether Commerce acted within its discretion or arbitrarily.

The trial court's method of analysis with regard to the issue of arbitrariness was misplaced. Although the trial court found Commerce's actions arbitrary, it based that determination on its flawed conclusion that section 1675(a)(2)(C) required Commerce to use the final results as the basis for the rates on Consolidated's imports. The trial court considered the 1998 instructions a violation of section 1675(a)(2)(C) because they improperly modified the 1997 instructions that were based on the final results. In other words, the Court of International Trade examined the two instructions at issue for any conflict. The statute, however, does not compel that comparison, nor can that comparison reveal any arbitrariness in Commerce's action. Commerce's expertise endows it with discretion to determine when and how to implement the final results beyond their literal, statutory scope. *See Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1379 (Fed.Cir.2003) ("Commerce's special expertise in administering the anti-dumping law entitles its decisions to deference from the courts").

Consistent with § 1675(a)(2)(C), the 1997 instructions merely required application of the importer-specific rates to importers within the scope of the review. The 1998 instructions required automatic liquidation for all imports not addressed in the 1997 instructions. Thus, under a proper reading of § 1675(a)(2)(C), the two instructions are not inconsistent. This case requires a determination of whether Commerce had a consistent practice from which it departed when it required automatic liquidation of Consolidated's entries of AFBs. Rather than comparing the 1997 and 1998 instructions to each other, the proper mode of analysis requires comparison of Commerce's actions before this case with Commerce's actions in this case. If that analysis shows that Commerce acted differently in this case than it has consistently acted in similar circumstances without reasonable explanation, then Commerce's actions will have been arbitrary. *See RHP Bearings v. United States,* 288 F.3d 1334, 1347 (Fed.Cir.2002) ("an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." (Citation omitted.))

In other words, both sets of instructions implemented Commerce's final results. In order to show that the 1998 instructions were arbitrary and capricious, Consolidated must show that Commerce consistently followed a contrary practice in similar circumstances and provided no reasonable explanation for the change in practice. Because the record is not sufficiently developed for resolution of this issue, this court vacates the trial court's judgment that Commerce was arbitrary in its actions and remands the case for further adjudication on this issue. Thus, this court vacates the trial court's affirmance of Commerce's *Remand II.*

## III.

Title 19, § 1675(a)(2)(C), only requires Commerce to apply the final results of an

administrative review to those import transactions specifically covered by the review. Consequently, the trial court's holding that the statute compels Commerce to apply the 1997 instructions to the imports of Consolidated is reversed. In addition, this court vacates the judgment of the trial court that Commerce acted arbitrarily and remands for further adjudication consistent with this opinion. On remand, the trial court will have the opportunity to examine whether Commerce had a consistent past-practice with respect to imports from unrelated resellers not covered by the administrative review, whether there was any departure in this case from a consistent past practice, and whether that departure was arbitrary.

### COSTS

Each party shall bear its own costs.

*REVERSED, VACATED, and REMANDED.*