# United States Court of Appeals for the Federal Circuit

04-1556

CONSOLIDATED BEARINGS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Christopher R. Wall, Pillsbury Winthrop Shaw Pittman LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was William DeVinney.

Cristina Ashworth, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and David Silverbrand, Trial Attorney. Of counsel on the brief were John D. McInerney, Chief Counsel, Berniece A. Browne, Senior Counsel, and Patrick V. Gallagher, Jr., Senior Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

04-1556

CONSOLIDATED BEARINGS COMPANY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  June 21, 2005

_____

Before CLEVENGER, RADER, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiff-appellant Consolidated Bearings Company ("Consolidated") appeals the United States Court of International Trade's decision affirming the final results of a redetermination by the Department of Commerce ("Commerce") pursuant to a remand order from the Court of International Trade.  See Consol. Bearings Co. v. United States, 346 F. Supp. 2d 1343 (Ct. Int'l Trade 2004).  In the final results, Commerce determined that it did not depart from a consistent past practice by instructing the United States Customs Service ("Customs") to liquidate Consolidated's unreviewed entries of antifriction bearings ("AFBs") from an unrelated reseller at the original cash deposit rate rather than the manufacturer's rate established pursuant to an administrative review. Final Results of Redetermination Pursuant to Court Remand, slip op. 04-10, at 6

(Apr. 28, 2004) ("Remand Redetermination"). Because substantial evidence supports Commerce's determination that it has in the past consistently liquidated unreviewed entries from an unrelated reseller at the cash deposit rate when the manufacturer has no knowledge that the subject merchandise is ultimately destined for the United States, we affirm the Court of International Trade's judgment.

I

In 1989, after determining that certain imported AFBs were being sold below fair value in the United States to the detriment of domestic industry, Commerce issued antidumping duty orders concerning AFBs exported from several countries, including Germany. See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, 54 Fed. Reg. 20,900 (May 15, 1989). Between 1989 and 1997, Consolidated purchased and imported from an unaffiliated foreign reseller AFBs manufactured by FAG Kugelfischer Georg Schaefer KgaA ("FAG"). Consolidated consequently paid cash deposits of estimated antidumping duties based on the rates Commerce assigned to FAG in the antidumping duty orders concerning AFBs.

After receiving requests from domestic importers for an administrative review of the antidumping duty order applicable to AFB imports from FAG and others, Commerce initiated an administrative review on June 11, 1990. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews, 55 Fed. Reg. 23,575 (June 11, 1990). Because Consolidated did not request an administrative review for the

reseller's sales to Consolidated, and neither Consolidated nor the reseller participated in the review, Commerce did not consider Consolidated's entries of AFBs in the review.

On July 11, 1991, Commerce published the final results of the administrative review and stated that "[w]ith respect to companies not participating in this review, presumably all interested parties were satisfied with the previously published cash deposit rates for assessment purposes." Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review, 56 Fed. Reg. 31,692, 31,700 (July 11, 1991). Commerce ultimately amended the results to include weighted-average antidumping duty rates for various exporters, including one for FAG. Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Germany; et al.; Amended Final Results of Antidumping Duty Administrative Reviews, 62 Fed. Reg. 32,755, 32,756 (June 17, 1997). Under these final results, each participating importer of FAG-manufactured AFBs received a new duty rate.

On September 9, 1997, Commerce instructed Customs to liquidate AFBs pursuant to the final results of the administrative review. See Liquidation Instructions for Antifriction Bearings (Other than Tapered Roller Bearings) & Parts Thereof From Germany, Message No. 7252113 (Sept. 9, 1997) ("September 1997 instructions"). Because Consolidated did not participate in the review, the final results did not include a new antidumping duty rate for Consolidated or its reseller. On August 4, 1998, Commerce again instructed Customs that if it was "still suspending liquidation on any entries of AFBs from Germany . . . after applying all of the above liquidation instructions, [it] should now liquidate such entries at the deposit rate required at the time of entry of

the merchandise"—a rate higher than that set forth in the September 1997 liquidation instructions for named importers of AFBs manufactured by FAG. Liquidation Instructions for AFBs and Parts Thereof from Germany from the Period 11/9/88 Through 4/30/90, Message No. 8216117 (Aug. 4, 1998) ("August 1998 instructions"). Commerce thereafter liquidated Consolidated's imports of AFBs at the cash deposit rate.

Consolidated filed suit pursuant to 28 U.S.C. § 1581(i) in the Court of International Trade, seeking to invalidate the August 1998 instructions. See Consol. Bearings Co. v. United States, 166 F. Supp. 2d 580 (Ct. Int'l Trade 2001). The case was ultimately appealed to this court, and we held that 19 U.S.C. § 1675(a)(2)(C)— which explains that a determination of antidumping duties in an administrative review shall "be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties"—does not afford an importer a statutory right to have the results of an administrative review applied to its entries if Commerce did not consider the entries in the review. Consol. Bearings Co. v. United States, 348 F.3d 997, 1005-06 (Fed. Cir. 2003). We nonetheless remanded the case for a determination of whether "Commerce had a consistent past-practice with respect to imports from unrelated resellers not covered by the administrative review, whether there was any departure in this case from a consistent past practice, and whether that departure was arbitrary." Id. at 1008. The Court of International Trade in turn remanded the case to Commerce. See Consol. Bearings Co. v. United States, No. 98-09-02799 (Ct. Int'l Trade Jan. 30, 2004).

Upon remand, Commerce identified its past practice with respect to unaffiliated resellers as follows:

> The Department's past practice has been to assess the reseller's sales separately from those of the manufacturer, provided that the manufacturer does not have knowledge that its sales to the reseller are ultimately destined for the United States. If the request for review is made for a reseller and its supplier does not know that the reseller is exporting the merchandise to the United States, then the Department will calculate a rate for the reseller based on the reseller's pertinent sales made during the period of review. If a request for review is not made for the reseller, however, then the Department treats the reseller as any unreviewed company and assesses a duty at the rate required on the merchandise at the time of entry . . . .

Remand Redetermination at 6 (citation omitted).

The Court of International Trade upheld Commerce's assessment of its past consistent practice and ruled that Consolidated's imports were dutiable at the cash deposit rate. Consol. Bearings, 346 F. Supp. 2d at 1347-48. The Court of International Trade further determined that Commerce in the past has deviated from this practice only when both of the following factors were present: (1) the importer did not participate in the administrative review; and (2) no rate other than the manufacturer's review rate was assessed by Commerce in the review proceedings. Id. at 1347. Because Commerce assessed rates other than the manufacturer's review rate to other resellers, the Court of International Trade determined that a departure by Commerce from its past consistent practice to accommodate Consolidated was not warranted. Id. Consolidated appeals. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5) (2000).

04-1556                                        5

II

In reviewing decisions by the Court of International Trade in actions pursuant to 28 U.S.C. § 1581(i), we apply the standard of review set forth in the APA and will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); Humane Soc'y of the United States v. Clinton, 236 F.3d 1320, 1324 (Fed. Cir. 2001) ("[T]his Court will apply the standard of review set forth in 5 U.S.C. § 706 to an action instituted pursuant to 28 U.S.C. § 1581(i)."). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

"Substantial evidence" describes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938). To determine if substantial evidence exists, we review the record in its entirety, including all evidence that "fairly detracts from the substantiality of the evidence." Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

III

The case is now before us for the limited purpose of determining whether substantial evidence supports Commerce's finding that its August 1998 instructions to Customs reflect a consistent past practice of liquidating unreviewed entries from unrelated resellers at the cash deposit rate rather than the manufacturer's review rate,

provided that the manufacturer does not have knowledge that its sales to the reseller are ultimately destined for the United States, or instead are an unjustified departure from a contrary past practice without reasonable explanation. It was Consolidated's burden on remand to prove the latter. See Consol. Bearings, 348 F.3d at 1007 ("In order to show that the 1998 instructions were arbitrary and capricious, Consolidated must show that Commerce consistently followed a contrary practice in similar circumstances and provided no reasonable explanation for the change in practice.").

Upon considering all of the evidence set forth by Commerce in its Remand Redetermination, and all of the evidence presented by Consolidated, we conclude that Commerce did not arbitrarily depart from a past practice of liquidating unreviewed entries at the cash deposit rate rather than the manufacturer's review rate.

A

Commerce first calls attention to the distinction in 19 C.F.R. § 353.22(e)(1) (1995) between reviewed and unreviewed entries. During the relevant time period, subsection 353.22(e)(1) read as follows:

> [I]f [Commerce] does not receive a timely request [for an administrative review], [Commerce] . . . will instruct the Customs Service to assess antidumping duties on the merchandise . . . at rates equal to the cash deposit of . . . estimated antidumping duties required on that merchandise at the time of entry . . . .

19 C.F.R. § 353.22(e)(1) (1995). The existence of a regulation does not, by itself, establish that Commerce consistently acted according to its terms. Subsection 353.22(e)(1) does, however, shed light on what Commerce during the relevant time period publicized its practice to be. In light of our determination in Consolidated Bearings that 19 U.S.C. § 1675 does not afford an importer statutory entitlement to use

of the results of an administrative review as the basis for Commerce's assessment of duties on the importer's unreviewed entries, 348 F.3d at 1006, the meaning behind subsection 353.22(e)(1) is clear. Commerce's past practice, at least as described by the regulation, was to liquidate unreviewed entries at the cash deposit rate.

Commerce next states that its practice of assessing antidumping duties on an importer-specific basis was described in the preliminary and final decision notices in the present case, both of which issued well before the August 1998 instructions at issue. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review, 56 Fed. Reg. 31,692, 31,694 (July 11, 1991) ("[W]e will calculate wherever possible an exporter/importer-specific assessment rate [which will] . . . be assessed uniformly on all entries of the class or kind of merchandise by that particular importer during the review period."); Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews, 56 Fed. Reg. 11,200, 11,201 (Mar. 15, 1991) ("[W]e will calculate an importer-specific ad valorem appraisement rate for each class or kind of antifriction bearings [which] . . . will be assessed uniformly on all entries of that particular importer made during the review period."). We agree with Commerce that the notices are consistent with our interpretation of subsection 353.22(e)(1)—i.e., that the notices reflect Commerce's intention to calculate duty rates on an importer-specific basis and Commerce's focus on a given importer's entries of AFBs in calculating and assessing the duties.

Commerce finally offers five actual instructions to Customs to liquidate entries from unreviewed resellers involved in the review of AFBs from France, Japan, Singapore, Sweden and the United Kingdom at the cash deposit rate. The following instruction is representative:

> If you are still suspending liquidation on any entries of AFBs from France during the period 11/9/88 through 4/30/90 after applying all of the above liquidation instructions, you should now liquidate such entries at the deposit rate required at the time of entry of the merchandise.

(App. at 141.) As Consolidated correctly observes, the five instructions pertain to the same administrative review of AFBs that brought about the instructions at issue here. There is no doubt, however, that they were issued prior to the August 1998 instructions pertaining to Consolidated's entries in this case. In light of the regulatory context provided by subsection 353.22(e)(1) and the lack of any evidence to the contrary, we determine the instructions to be substantial evidence that Commerce's past practice was to liquidate at the cash deposit rate rather than at the manufacturer's review rate all entries not reviewed by Commerce in an administrative review, provided that the manufacturer had no knowledge of the ultimate destination of the subject merchandise. We further agree with the Court of International Trade that Commerce did not arbitrarily depart from that practice here.

B

For its part, Consolidated first points in the record to over one hundred pages of liquidation instructions issued by Commerce to Customs. But Consolidated does little to explain the relevance of any of the instructions beyond an assertion that many provide for the liquidation of "all" subject entries, and that "all" means exactly that—every entry from the manufacturer, regardless of whether it was reviewed. Upon review of the

instructions, however, we determine that there simply is no suggestion in any of them that Commerce intended to apply the results of the review of a particular producer to the unreviewed exports of a reseller—no suggestion that "all" encompasses something more than all entries actually reviewed by Commerce in arriving at a final dumping margin determination.

Consolidated also makes much of the Court of International Trade's findings in Nissei Sangyo America, Ltd. v. United States, No. 00-00113, 2003 WL 21972722 (Ct. Int'l Trade Aug. 18, 2003), Renesas Technology America, Inc. v. United States, No. 00-00114, 2003 WL 21972721 (Ct. Int'l Trade Aug. 18, 2003), and ABC International Traders, Inc. v. United States, 19 C.I.T. 787 (1995), arguing that the court therein found that Commerce has in the past applied a final determination of a manufacturer's dumping margin for particular merchandise to all importers of such merchandise, regardless of whether the importer participated in the administrative review. While the Court of International Trade expressly found in Nissei and Renesas that Commerce "changed its past practice of liquidating at the rate established for the most recent period for the manufacturer of the merchandise," Nissei, 2003 WL 21972722, at *6 (quotation omitted); see also Renesas, 2003 WL 21972721, at *6, prior decisions by the Court of International Trade do not constitute evidence of Commerce's past practice and are not binding on this court. Furthermore, the Court of International Trade in ABC International rejected the importer's attempts to establish that the Japanese manufacturers at issue in the case had no knowledge of the ultimate destination of their merchandise, and therefore at least implicitly recognized the import to Commerce's antidumping duty calculus of the manufacturer's knowledge of the

ultimate destination of subject merchandise. But to the extent that these cases offer some support for the conclusion sought by Consolidated on appeal, we disagree with the findings therein and hold to the contrary that the Court of International Trade did not err in affirming Commerce's determination that it has consistently liquidated unreviewed entries from unrelated resellers at the cash deposit rate.

Finally, Consolidated complains that Commerce did not affirmatively act to provide Consolidated with access to "non-public files" containing Commerce's past instructions to Customs in other cases. Specifically, Consolidated argues that "Commerce should have requested permission to release confidential information" and that "Commerce has not offered any evidence, or even any argument, why obtaining such permission would be an undue burden." (Reply Br. of Appellant at 10-11.) We note, however, that Consolidated does not contend that the Court of International Trade rejected a discovery request from Consolidated to provide these liquidation instructions in redacted form. We have reviewed the record established before the Court of International Trade in this case and have found no proper attempt by Consolidated to pursue additional discovery to gain access to proprietary materials that may have been submitted to Commerce in confidence.

The record discloses that when the Remand Determination was before the Court of International Trade, Commerce averred that "there is some difficulty in demonstrating the consistent language in liquidation instructions regarding the treatment of reviewed and unreviewed companies across different administrative reviews given the proprietary nature of some information in the instructions (i.e., identities of importers/customers) that would have provided more meaning to their use as examples." Rebuttal

Comments, July 19, 2004. Commerce did not aver that it had in fact relied on instructions in files covered by such proprietary restrictions. Neither the Court of International Trade nor this court relies on any information from such files in affirming the Remand Determination. And, as noted above, the record does not disclose any attempt by Consolidated to force release of the proprietary information to which Commerce alluded but on which it did not rely.

Consolidated's complaint that Commerce did not take affirmative steps to liberate certain files from proprietary restrictions, presumably by appropriate redaction of confidential material, has no merit in this case, since the information that was deemed proprietary was not specifically requested and was not used by the agency or the courts in reaching a decision adverse to Consolidated.

Although Commerce may not disclose information designated as proprietary by the person submitting the information without consent of the submitting person, see 19 U.S.C. § 1677f(b)(1)(A) (2000), for Commerce to defend the reasonableness of its position based on proprietary information while refusing to release the information from confidentiality restriction would raise serious questions, as would Commerce's refusal to release information that would contradict the agency's position. Whether Commerce in such a case could by redaction or otherwise satisfy the test of section 1677f(b)(1)(A) would be a matter for the court to decide.

IV

In conclusion, upon reviewing anew the totality of the evidence before the Court of International Trade, and the full record on appeal, we conclude that Consolidated failed to meet its burden of showing that the August 1998 instructions were arbitrary and

capricious, i.e., that Commerce consistently followed a practice in similar circumstances contrary to that outlined in the August 1998 instructions and provided no reasonable explanation for the change in practice. Indeed, substantial evidence supports Commerce's determination that it has consistently liquidated unreviewed entries from unrelated resellers at the cash deposit rate.

In reaching this conclusion, however, we reject the Court of International Trade's determination that Commerce in the past has deviated from its consistent practice only when (1) the importer did not participate in the administrative review; and (2) no rate other than the manufacturer's review rate was assessed by Commerce in the review proceedings. Neither Consolidated nor Commerce advocates use of the factors to explain past deviations from Commerce's consistent practice, and we find no support for their use for that purpose in the record.

The decision of the Court of International Trade to affirm Commerce's <u>Remand Redetermination</u> is hereby affirmed.

COSTS

Each party shall bear its own costs.

<u>AFFIRMED</u>