NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PAKFOOD PUBLIC COMPANY LIMITED,
THAI UNION FROZEN PRODUCTS
PUBLIC CO., LTD.,
AND THAI UNION SEAFOOD CO., LTD.,**
*Plaintiffs,*

AND

**ANDAMAN SEAFOOD CO., LTD.,
CHANTHABURI FROZEN FOOD CO., LTD.,
CHANTHABURI SEAFOODS CO., LTD.,
PHATTHANA SEAFOOD CO., LTD.,
PHATTHANA FROZEN FOOD CO., LTD.,
THAILAND FISHERY COLD STORAGE
PUBLIC CO., LTD.,
THAI INTERNATIONAL SEAFOODS CO., LTD.,
SEA WEALTH FROZEN FOOD CO., LTD.,
AND RUBICON RESOURCES, LLC,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**THE DOMESTIC PROCESSORS,**
*Defendant-Appellee,*

AND

**AD HOC SHRIMP TRADE ACTION COMMITTEE,**
*Defendant-Appellee.*

———————————

2011-1282

———————————

Appeal from the United States Court of International Trade in consolidated case nos. 09-CV-0430, 09-CV-0443, 09-CV-0445, and 09-CV-0447, Chief Judge Donald C. Pogue.

———————————

Decided: December 19, 2011

———————————

WALTER J. SPAK, White & Case LLP, of Washington, DC, for plaintiffs-appellants. With him on the brief was JAY C. CAMPBELL.

STEPHEN C. TOSINI, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee, United States. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

ELIZABETH J. DRAKE, Stewart and Stewart, of Washington, DC for defendant-appellee, The Domestic Processors. With her on the brief were GEERT M. DEPREST and TERENCE P. STEWART. Of counsel on the brief was EDWARD T. HAYES, Leake & Anderson, LLP, of New Orleans, Louisiana.

NATHANIEL M. RICKARD, Picard Kentz & Rowe, LLP, of Washington, DC, for defendant-appellee, Ad Hoc

Shrimp Trade Action Committee.  With him on the brief were JORDAN C. KAHN and ANDREW W. KENTZ.

---

Before LINN, PROST, and MOORE, *Circuit Judges*.

LINN, *Circuit Judge*.

Andaman Seafood Co., Ltd., Chanthaburi Frozen Foods Co., Ltd., Chanthaburi Seafoods Co., Ltd. ("Chanthaburi"), Phatthana Seafood Co., Ltd. ("Phatthana"), Phatthana Frozen Food Co., Ltd., Thailand Fishery Cold Storage Public Co., Ltd., Thai International Seafoods Co., Ltd., Sea Wealth Frozen Food Co., Ltd., and Rubicon Resources, LLC (collectively, "Rubicon" or "Rubicon Group") appeal from the Court of International Trade's affirmance of the United States Department of Commerce's ("Commerce") refusal to grant Chanthaburi and Phatthana an offset for certain interest income when calculating dumping margins during its administrative review of the antidumping duty orders on certain frozen warmwater shrimp from Brazil, Ecuador, India, and Thailand. *See Pakfood Public Co. Ltd. v. United States*, 724 F. Supp. 2d 1327, 1353-57 (Ct. Int'l Trade 2011)*, made final by* Consol. Court No. 09-00430 (Jan. 18, 2011) ("*Judgment*").  Because the Court of International Trade correctly found that Rubicon failed to establish that Commerce unreasonably departed from settled practice, and because Rubicon fails to support any other basis for error, this court affirms.

## I. BACKGROUND

This appeal arises from Commerce's administrative review of the antidumping duty order on shrimp from Thailand for the period of February 1, 2007, through January 31, 2008.  *Certain Frozen Warmwater Shrimp from Brazil, Equador, India and Thailand*, 73 Fed. Reg.

18754 (Dep't Commerce Apr. 7, 2008). The members of the Rubicon Group participated in the review as mandatory respondents.

In answering Commerce's antidumping questionnaire, Chanthaburi and Phatthana each reported certain interest income on 12-month-term interest bearing accounts as an offset to financial expenses. Rubicon listed these accounts as "non-current" (i.e. long-term) assets but contended that they were required as collateral to secure operational loans and lines of credit and, therefore, should be treated differently than Commerce would otherwise treat long-term assets. According to Rubicon, interest on these deposits was related to daily operations and entitled to an offset.

Commerce acknowledged that these deposits were required as a condition for Chanthaburi and Phatthana to obtain credit. Nonetheless, Commerce declined to allow the requested offset, explaining that "it is [Commerce's] practice to allow a respondent to offset financial expenses only with short-term interest income generated from a company's current assets and working capital accounts" and that because the deposits "were appropriately classified as non-current assets . . . [Commerce did] not consider these compensating balances to be liquid working capital reserves which would be readily available for the companies to meet their daily cash requirements." *Pakfood*, 724 F. Supp. 2d at 1354 (quotation omitted).

Rubicon then initiated this action in the Court of International Trade, contending that Commerce's refusal to allow the claimed offset was not in accordance with its established practice, but, in fact, was contrary to past determinations. The Court of International Trade affirmed Commerce's decision, explaining that Rubicon had failed to carry its burden of proving that Commerce had departed from established practice without reason. *Id.* at

1357 (quoting *Consol. Bearings v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005)).

Following remand on other grounds, the case returned to the Court of International Trade, which entered final judgment affirming the final results of the administrative review. *Judgment* at 1. Rubicon timely appealed and this court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of Review

This court reviews the decision of the Court of International Trade *de novo*, "apply[ing] anew the same standard used by the court, and . . . will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law." *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### B. Analysis

Rubicon argues on appeal that Commerce's denial of the claimed offset was an unreasonable departure from past practice. Rubicon asserts that while Commerce generally allows an offset only for interest earned on current assets when calculating net financial expenses under 19 U.S.C. § 1677b(b)(3) & (e), "Commerce allows respondents to submit proof that interest on long-term investments is related to current operations." *Gulf States Tube Div. of Quanex Corp. v. United States*, 981 F. Supp. 630, 651 (Ct. Int'l Trade 1997). Rubicon argues that the

practice of allowing such offsets for interest on long-term assets is evidenced by *Dynamic Random Access Memory Semiconductors of One Megabit or Above from the Republic of Korea* ("*DRAMs*"), 64 Fed. Reg. 69694, 69707 (Dep't Commerce Dec. 14, 1999), *aff'd following appeal on other grounds by Hyundai Elec. Indus. Co. v. United States*, 342 F. Supp. 2d 1141, 1161 (Ct. Int'l Trade 2004). Rubicon states that, in *DRAMs*, Commerce allowed an offset that was no different from the one sought by Rubicon and that any deviation from that practice is therefore unreasonable.

According to Rubicon, because Commerce's stated rationale is that "'income from long-term financial assets . . . is related to investing activities and is not associated with the general operations of the company' . . . , Commerce must permit an offset for interest income from long-term financial assets that *are* associated with the company's general operations." Appellants' Br. 11 (emphasis in original) (quoting *Silicon Metal from Brazil*, 71 Fed. Reg. 7517 (Dep't Commerce Feb 13, 2006), Issues and Decision Memorandum at Comment 4). Rubicon further asserts that the failure to recognize interest income related to general operations "violates Commerce's statutory obligation to calculate dumping margins 'as accurately as possible.'" *Id.* at 12 (quoting *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).

The United States, the Domestic Processors, and the Ad Hoc Shrimp Trade Action Committee (collectively, "Appellees") respond that Commerce has a long established practice of allowing offsets only for interest earned on current assets and that this practice has been affirmed by the Court of International Trade. Appellees explain that *DRAMs* was a one-time deviation from this practice, which Commerce has repudiated as inconsistent with its established practice. Appellees also argue that the single quote from *Gulf States*, 981 F. Supp. at 651, that Com-

merce "allows respondents to submit proof that interest on long-term investments is related to current operations," does not overcome the substantial evidence of Commerce's established practice.

Appellees argue further that Commerce's practice is reasonable and reasonably explained: Commerce does not allow offsets for interest on non-current accounts because the underlying asset is not liquid and therefore not available to fund operations. Appellees explain that, by contrast, cash accounts and capital reserves are necessary to fund operations such that interest earned on such assets directly reduces the cost of those operations.

There is no dispute in this case that Commerce engaged in authorized statutory gap-filling on an issue where the anti-dumping statute is silent. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). Because Rubicon frames this appeal as relating to Commerce's impermissible deviation from established practice, this is the only issue we address.

To challenge Commerce's determination as an unreasoned departure from past practice, Rubicon had the burden of showing that "Commerce consistently followed a contrary practice in similar circumstances and provided no reasonable explanation for the change in practice." *Consol. Bearings*, 412 F.3d at 1269 (quotation omitted); *Huvis Corp. v. United States*, 570 F.3d 1347, 1353 (Fed. Cir. 2009) (Commerce's deviation from an established practice will not be disturbed if "its methodology is permissible under the statute and . . . it had good reasons for the new methodology."); *see also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)

("Agency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework. . . . For if the agency adequately explains the reasons for a reversal of policy, change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." (quotation omitted)).

In its effort to show that Commerce had an earlier contrary practice that it consistently applied in similar circumstances, Rubicon musters one instance, *DRAMs*, where Commerce actually did what Rubicon contends it should have done here. Commerce has since repudiated *DRAMs* as contrary to its established practice. *See Polyethylene Retail Carrier Bags From Thailand, Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 65,751 (Dep't Commerce Dec. 11, 2009), Final Results of Antidumping Duty Administrative Review at 9 Cmt. 4 ("We do not consider our decision in [] *DRAMs* to be consistent with our normal practice of only permitting an offset for short-term interest income generated from a company's current assets and working capital accounts.").

As the Court of International Trade correctly explained, Commerce has a consistent practice of not allowing offsets for interest earned on non-current assets:

> [R]egardless of the nature of Commerce's practice . . . in the past, at the time of the instant review, Commerce had clearly established a practice of allowing income expense offsets solely for short-term income from current assets and working capital accounts. As early as 2005, and as late as just eight months prior to the publication of its Preliminary Results in this review . . . Commerce reiterated [this practice].

*Pakfood*, 724 F. Supp. 2d at 1355-56, n.52 (gathering cases) (citations omitted).

Rubicon finds no fault with the Court of International Trade's documentation of the multiple cases where Commerce applied the same practice it applied here. Rubicon's reliance on *DRAMs*, a single inconsistent case in the face of a plurality of subsequent consistent cases, does not provide substantial evidence that Rubicon's treatment at the hands of Commerce represented a departure from past practice consistently applied in similar circumstances. *See U.S. Steel*, 621 F.3d at 1357; *Consol. Bearings*, 412 F.3d at 1269.

Rubicon quotes *Gulf States*, which contains the statement, "Commerce allows respondents to submit proof that interest on long-term investments is related to current operations." This statement is but a passing reference in a case which affirmed Commerce's refusal to allow an offset for certain long-term interest. *Gulf States*, 981 F. Supp. at 1038. This single out-of-context characterization of Commerce's practice by the Court of International Trade does not rebut the substantial evidence of Commerce's actual established practice. This court therefore agrees with the Court of International Trade's conclusion that:

> Because [Commerce's] decision with regard to the Rubicon Group's interest income is consistent with Commerce's prior decisions restricting offsets to short-term income, as well as with [Commerce's] explanations that, because current assets and working capital accounts are necessary to meet a company's daily cash requirements, [Commerce] will grant offsets only where the income in question derives from such assets . . . , Rubicon has failed to establish that Commerce

"consistently followed a contrary practice in simi-
lar circumstances."

*Pakfood*, 724 F. Supp. 2d at 1357 (quoting *Consol. Bear-
ings*, 412 F.3d at 1269).

Because substantial evidence supports the conclusion
that Commerce did not depart from its past practice, the
question of whether Commerce provided a reasonable
explanation for such a departure need not be addressed.

## III. CONCLUSION

For the foregoing reasons, the decision of the Court of
International Trade is affirmed.

## AFFIRMED